Paul David WILLIAMS, Plaintiff,

v.

The CITY OF LULING, Travis Thomas, Keith Williamson, Nixon Richter, III, Nixon Richter, Jr. Individually and d/b/a Frank's Garage & Towing Service, Defendants.

No. A 91 CA 015.

United States District Court, W.D. Texas, Austin Division.

Sept. 8, 1992.

Andrew Shuvalov, Austin, Tex., for plaintiff.

Lowell F. Denton, Phil Steven Kosub, Ricardo J. Navarro, Denton, McKamie & Navarro, San Antonio, Tex., for defendants City of Luling, Travis Thomas, Keith Williamson and Nixon Richter, III.

Phil Steven Kosub, San Antonio, Tex., William W. McNeal, Lockhart, Tex., for defendant Nixon Richter, Jr.

## MEMORANDUM OPINION AND ORDER

SPARKS, District Judge.

BE IT REMEMBERED on April 17, 1992, the parties in the above-styled and numbered cause appeared in person and by and through their attorneys of record before this Court for a hearing on qualified immunity. Having read the pleadings, reviewed the relevant depositions and affidavits, and listened to the arguments of counsel, the Court is of the opinion that Nixon Richter, III, Travis Thomas, and Keith Williamson are not entitled to the protection of qualified immunity from liability under Section 1983 as a matter of law in this case and finds there exist genuine issues of fact with respect to all of the causes of action alleged, including Williams' allegations that the Defendants conspired to deprive him of his constitutional rights. Finally, the Court is of the opinion that the City of Luling should not be dismissed as Travis Thomas, Chief of Police of Luling, may have acted as a policymaker for the City of Luling with regard to the policies of Luling's Police Department.

## I. INTRODUCTION

Paul David Williams ("Williams") filed suit against the above-named Defendants and Judge J.J. Hicks, who has since died and been dismissed from the lawsuit, on December 7, 1990, in state district court. Williams alleges that the Defendants violated his constitutional rights under the First, Fourth, and Fourteenth Amendments and committed the state torts of malicious prosecution, abuse of process and false imprisonment when they filed a criminal complaint against him, issued an arrest warrant, and arrested him for theft. Williams complains not only of the fact that he was arrested, but also of the manner in which he was arrested. Because constitutional violations were alleged, the Defendants removed the case to federal court.

On December 9, 1991, the City Defendants (City of Luling, Travis Thomas, J.J. Hicks, Keith Williamson, and Nixon Richter, III) filed a Motion for Summary Judgment, and on December 18, 1991, Defendant Nixon Richter Jr. filed a Motion for Summary Judgment.[1] Primarily, Defendants claim that Thomas, Williamson, and Richter III are entitled to qualified immunity; the City of Luling is not liable for the actions of its police chief or officers; Richter Jr. and the City Defendants did not conspire to deprive Williams of his constitutional rights; and all defendants had probable cause to arrest Williams.

The file in this case is full of lengthy depositions and affidavits with enough variation to make the facts far from undisput-

---

1. Actually, Nixon Richter Jr.'s Motion for Summary Judgment was "received" on December 18, 1991. However, the Court will grant Richter Jr.'s motion for leave to file that dispositive motion in another order.

ed. However, a final resolution of the facts is unnecessary. *See Sanders v. English*, 950 F.2d 1152, 1154–55 (5th Cir.1992). Rather, the following recital sets forth the facts in the light most favorable to the plaintiff Williams. First, however, due to the number of parties and family relationships involved, the Court will borrow from the Index of Parties put together by the Defendants for the Court in their Motion for Summary Judgment.

## II. PARTIES

J.J. HICKS City of Luling Municipal Court Magistrate who issued the warrant of arrest for Williams based on the complaint signed by Nixon Richter Jr. Hicks was a named defendant in the case but has been dismissed as he passed away in April 1991.

JIMMIE RICHTER Nixon Richter Jr.'s wife and Officer Nixon Richter III's mother. She is not a named defendant in the case.

NIXON RICHTER JR. The owner of Frank's Garage and Richter's Towing Service [hereinafter Richter's Garage] and father of Nixon Richter III. Nixon Richter Jr. is also a former Chief of Police of Luling.

NIXON RICHTER III A police officer with the City of Luling Police Department and Nixon Richter Jr.'s son. Officer Richter typed up the complaint against Williams, which was signed by his father Richter Jr., and participated in the arrest of Williams on December 19, 1988.

TRAVIS THOMAS Police Chief of the City of Luling Police Department and supervisor of Officer Richter III and Officer Williamson.

PAUL DAVID WILLIAMS Plaintiff in this cause. Williams placed a stop payment on a check for towing services by Richter's Garage after he had told several of the defendants he believed the damage to his truck had been caused when his truck was towed by Richter's Garage after his son's arrest. Williams was arrested by Officers Richter III and Williamson on No-

vember 8, 1988 as a result of a complaint signed by Richter Jr. alleging that Williams had committed theft of services when he stopped payment on the check.

KEITH WILLIAMSON A City of Luling police officer and one of the two police officers who was present when Williams went to pick up his truck from Richter's garage and when Williams was subsequently arrested.

## III. FACTS

### A. *Towing and Stop Payment*

Nixon Richter, Jr. ("Richter Jr."), Officer Nixon Richter III's ("Officer Richter") father, owns a garage and towing service ("Richter's Garage") in Luling, Texas. While acting as a police officer in Luling, Officer Richter also worked part-time at Richter's Garage and held a financial interest in the business. Officer Richter III's wife Beth is, and was at the time of the events in this lawsuit, the dispatcher for the Luling Police Department. Tommy Richter, Officer Richter III's brother and Richter Jr.'s son, is currently a Luling Police officer. The Luling Police Department has six police officers and usually sends its patrol cars to Richter's garage for repairs and maintenance. *See Plaintiff's Response to City Defendants' Motion to Dismiss or for Summary Judgment and Defendant Richter's Motion to Dismiss or for Summary Judgment* (January 3, 1992) (citations to depositions omitted).

On October 29, 1988, Williams' truck was towed by Richter's Garage after Williams' son was arrested while driving Williams' truck. The following morning Williams went to pick up the truck. Officer Richter and Officer Williamson were present. According to Williams, a tire and rim had been damaged between the time he loaned the truck to his son and when he went to pick up the truck from Richter's Garage. Williams told Officer Richter and Officer Williamson that the tire had been damaged. Officer Williamson responded that the tire "must have been damaged while they were tying onto it", and Officer Richter told Williams, "you must be trying to cause

trouble". *Williams Deposition*, at 26–27. Williams then asked the officers to make a report on the damage. He was told by Officer Richter to come back the next day, a Monday, to file a claim. *See id.* at 27–30.

The following morning, October 30, 1988 (Monday), Williams went back to Richter Jr.'s Garage to pick up the truck and file a claim. He spoke with Mrs. Jimmie Richter, Richter Jr.'s wife. According to Williams, she told him she would report the damage to the insurance company, and she handed him a bill for the towing and storage. *Id.* at 33. Williams then wrote a check for $50.38 and took his truck. The next morning (Tuesday) he returned and asked Mrs. Richter for the insurance paper forms and report, which she did not have. *Id.*, at 40. Mrs. Richter told him no claim was filed and that "she thought [Williams] was just trying to harass them." *Id.* at 41. Mrs. Richter also would not tell Williams the name of Richter Garage's insurance company. *Id.* at 42.

That same day (Tuesday) after he left Richter Jr.'s Garage, Williams went to the police station and told Chief Travis Thomas about the incident, that is, about the damage to his truck and how the Richters had failed to make a claim with their insurance company. Chief Thomas "just sat there and listened and hemmed and hawed and never made a statement." *Id.* at 45. Williams then went to see the City Manager, Harold Watts, that same day and told him the same thing he had told Chief Thomas. Watts gave him complaint forms and told him to fill them out and file them with the police department and the city. *Id.* at 45–46.

On November 3, 1988, a day or two after Williams' Tuesday visit with Mrs. Richter, Chief Thomas, and City Manager Watts, Williams placed a stop payment on the check he had written to Richter Jr.'s Garage to pay for towing and storage. *Id.* at 62. According to Williams, he decided to put the stop payment on the check after Mrs. Richter told him she would not file a claim. *Id.* at 54. He also states that one or two days after he spoke with Mrs. Richter on the Tuesday, he wrote a letter to

Richter Jr. telling him about the damage to his truck and the cost of the damage, about $100 or $150. *Id.* at 58–60, 162.

### B. *Arrest of Williams*

After the bank returned Williams' check with "stop payment" stamped on it, Richter Jr. and Mrs. Richter spoke with several deputies, including their sons Tommy Richter and Officer Richter, who told them to talk to the judge (Judge Hicks). *Richter Jr. Deposition*, at 37–38; *Mrs. Richter Depositions*, at 38. On the day before the issuance of the complaint, Officer Richter took a statement from his mother, Mrs. Richter, and filed an offense report. *See Mrs. Richter Deposition*, at 39–42; *Officer Richter Deposition*, at 71–73, 133–36. Officer Richter did not ask his mother about Williams' claim for damages or include it in his offense report. *Id.* at 73.

The next day, Richter Jr. phoned Judge Hicks, who told him to bring the check down and they would file a complaint. *Mrs. Richter Deposition*, at 38–39; *Richter Jr. Deposition*, at 38. Richter Jr. went and talked to the judge, who told him he had a case and called Officer Richter in to fill out a complaint. *Id.* at 45. Neither Richter Jr. nor Officer Richter told Judge Hicks about the damages Williams claimed Richter Jr. had caused him. *Id.* at 46. Richter Jr. signed the complaint, which included no reference to the civil dispute between Williams and the Richters, and the arrest warrant was issued on November 8, 1988.

Rule 3 of Section 11 of the Luling Police Department Rules and Regulations, adopted by Chief Thomas as his own, states:

> No member of this department shall investigate a manner in which such member or a person relating to such member by blood or marriage is involved. No member of this department shall arrest in a manner which such officer or person related to such officer by blood or marriage is involved except under grave circumstances and under the permission of the chief or police.

*Thomas Deposition,* at 36, 41. Rule 2 of Section 11 states:

> Members of this department shall communicate to the chief of police all information concerning any crimes which come to their attention. No member of this department shall withhold information to be used for personal gains at a later date.

*Id.* at 36–37. All offense reports and arrest warrants are reviewed by Chief Thomas and, as already mentioned, Chief Thomas knew that Williams claimed Richter's Garage had damaged his truck when towing it and knew of the family relationship between Officer Richter, Richter Jr. and Mrs. Richter. Chief Thomas also knew that on December 19, 1988, Officers Richter III and Williamson were planning on doing a "warrant sweep", i.e., executing outstanding warrants, and that the warrant for Williams' arrest was one of those outstanding warrants. *Williamson Deposition,* at 18, 23.

Over a month later, on December 20, 1988, Officer Williamson and Officer Richter arrested Williams for theft by check. According to Williams, the officers waited until Williams was in a public place in order to humiliate and embarrass him. *Williams Deposition,* at 173. After arresting Williams, the officers did an inventory search of his vehicle before impounding it. During that search, according to Williams, approximately $2160 was taken from the vehicle and not put in the inventory report or ever returned to Williams. *Id.* at 95–97. The officers also seized a handgun from Williams' car. Officers Richter and Williamson called Richter's Garage to tow the car after Williams told them he did not want Richter's Garage to tow his car despite Luling Police Department's Wrecker Policy which allow a person to choose the wrecker company he wishes to have tow his or her car. *See Williams Response to City Defendants' Motion to Dismiss or for Summary Judgment,* Exhibit C. Once Williams arrived at the police station, at almost 5:00 p.m., Judge Hicks refused to magistrate him and said he "had things to do. Throw him [Williams] in jail." *Id.* at 188–89. Officer Richter and the dispatcher

(Officer Richter's wife) gave Williams one slice of pizza and a cup of water for dinner. Williams spent the night in a holding cell with only a small plastic pad which had been urinated upon by a previous occupant. He was magistrated the next morning and released at about 9:00 a.m. *Id.* at 111–14.

Williams was charged with unauthorized carrying of a weapon. However, Caldwell County Court Judge Jarrett later ruled that Williams' gun had been seized as a result of an unlawful search in violation of the Fourth Amendment and the charges for unlawful carrying of a weapon were dismissed. Williams was *never* charged with theft of services.

## IV. LEGAL ANALYSIS

The crux of Williams' complaint in this suit is that the Defendants' failure to mention the alleged civil dispute in the complaint caused the arrest warrant to be issued without probable cause. Williams alleges that Officer Richter, Officer Williamson, Chief Thomas, and Richter Jr. acted in concert to have Williams arrested and detained over night to "carry on a personal vendetta" against Williams because of the alleged civil dispute between Richter Jr. and Williams over the damages to Williams' truck and without reasonable grounds to believe Williams was guilty. *Plaintiff's First Amended Petition,* at paragraphs 3.1 and 3.5. Williams also alleges that Chief Thomas violated his constitutional rights for the above conduct because Chief Thomas knew of the civil dispute and authorized and ratified the officers' conduct. *Id.* at paragraph 3.5. Williams also alleges that the complaint was "clearly insufficient" and that all of the above Defendants knew it was "clearly insufficient". *Id.* at paragraph 3.1.

## A. QUALIFIED IMMUNITY

■ Defendants Chief Travis Thomas, Officer Keith Williamson, and Officer Nixon Richter III filed a motion for summary judgment on the basis of qualified immunity. Qualified immunity is generally a question of law. *Pfannstiel v. City of Marion,*

918 F.2d 1178, 1183 (5th Cir.1990). Even when the facts are disputed, as in this case, the Court may properly decide whether qualified immunity exists by simply viewing the facts in a light most favorable to the plaintiff.

A police officer is entitled to qualified immunity if his or her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable [police officer] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276–77 (5th Cir.1992). The test is purely objective. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Pfannstiel*, 918 F.2d at 1182.

The first determination this Court must make is whether Williams has alleged the violation of a clearly established constitutional right. *Duckett*, 950 F.2d at 276–77. In his complaint, Williams alleges generally that the Defendants' conduct violated his First and Fourth Amendment rights and violated his right to substantive and procedural due process under the Fourteenth Amendment. In later pleadings Williams more specifically claims Defendants deprived him of his right not to be arrested and detained without due process (false arrest and illegal detention), his right not to be deprived of property without due process, and his right not to be subjected to unreasonable search and seizure.

### 1. *False Arrest and Illegal Detention*

An individual has a right under the Fourteenth Amendment to not be deprived of liberty or property without due process. An individual also has a right under the Fourth Amendment to not be arrested or detained without probable cause. *Duckett*, 950 F.2d at 278. The fact that a magistrate has issued an arrest warrant does not shield an officer from liability if no reasonable officer would have believed probable cause existed. *Malley*, 475 U.S. at 345, 106 S.Ct. at 1098. Specifically, the Supreme Court has stated:

Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Id.* at 341, 106 S.Ct. at 1096.

Moreover, material misstatements and/or omissions in an affidavit or complaint submitted to a magistrate may defeat qualified immunity if without the misstatements or omissions no reasonable officer could have believed probable cause existed. *See Hale v. Fish*, 899 F.2d 390, 402 (5th Cir.1990); *Jureczki v. City of Seabrook, Tex.*, 760 F.2d 666, 668–69 (5th Cir. 1985); *LoSacco v. City of Middletown*, 745 F.Supp. 812, 816–17 (D.Conn.1990); *Hamrick v. City of Eustace*, 732 F.Supp. 1390 (E.D.Tex.1990); *see also Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978) (if after setting aside false material in a warrant affidavit there are sufficient facts left to sustain probable cause, the inaccuracies are irrelevant); *United States v. Namer*, 680 F.2d 1088, 1093 (5th Cir.1982); *United States v. Martin*, 615 F.2d 318, 327–29 (5th Cir. 1980).

Thus, in this case, the primary issue for this Court with regard to the Defendants' right to qualified immunity from Williams' false arrest and illegal detention claims is whether or not the Defendants, with *all* the knowledge they allegedly had, could not reasonably have believed there was probable cause to believe Williams was guilty of theft of services.

The complaint, prepared by Officer Richter III and signed by Richter Jr., states that

David Williams ... *with intent to avoid payment* for, storage and wreacker [sic] service that he knew was provided by Franks Garage only for compensation, did *intentionally* and knowingly *secure* performance of said service of the value of $50.00 by deception to wit: stop payment on check number 3556 issused [sic]

on the Red Bird Farms Rt. 1 Box 156 Hartwood, Texas.

While the arrest warrant for Williams states that Williams was charged with "theft by check", the complaint's language tracks the language of Tex.Penal Code § 31.04(a)(1), "theft of services".[2] That section reads, in part:

> (a) A person commits theft of service if, with intent to avoid payment for service that he knows is provided only for compensation:
>
> > (1) he intentionally or knowingly *secures* performance of the service by deception, threat, or false token[.]

Tex.Penal Code § 31.04(a)(1) (Vernon's 1989).

While the complaint is not insufficient on its face, having read carefully the Texas theft statutes and reviewed Texas theft cases, this Court agrees with Judge Jarrett, who heard Williams' motion to suppress in the State's case against Williams for possession of a weapon, there was not probable cause to issue an arrest warrant for Williams on the theft charges. In that proceeding, counsel for Williams argued that Williams could not possibly have secured performance of the towing or storage charges with intent to avoid payment because Williams' truck was towed and stored without his knowledge. While there is no case law precisely on point, there are Texas cases which make it clear that the defendant must have induced the provider of services to render services by way of some misrepresentation or deception. *See e.g., Gibson v. State*, 623 S.W.2d 324, 327–28 (Tex.Cr.App.1981).

■ Thus, in a case of involuntary towing, the defendant could never be guilty of theft of services no matter what his or her intent at the time the check was written because he or she would never have *secured* performance of those services with any intent at all, much less intent to deprive or deceive. *See id.*

■ However, even if a reasonable police officer might not recognize the difference between securing performance with intent to deprive and securing performance and *then* developing the intent to deprive and issuing a check with the intent to stop payment, he or she would still not be entitled to qualified immunity in this case. A reasonable police officer who knew of the family relationships involved and who knew of the dispute between Williams and the Richter family could not have reasonably withheld that information from the magistrate, whose job it is to act as an impartial decisionmaker, *Baker v. McCollan*, 443 U.S. 137, 143–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979), or reasonably thought there was probable cause to believe Williams was guilty of theft of services. *See Hale v. Fish*, 899 F.2d 390, 398, 402 (5th Cir.1990) (no reasonable officer would have submitted an affidavit for an arrest warrant containing omissions material to a finding of probable cause); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir.1985); *Thomas v. Sams*, 734 F.2d 185 (5th Cir.1984); *Baskin v. Parker*, 602 F.2d 1205 (5th Cir.1979).

*Moore, Thomas*, and *Baskin* are all pre-*Malley* cases involving fact situations similar to the one in this case. In *Moore*, plaintiffs were arrested after the restaurant owner called the local police and informed them several people had ordered meals, consumed drinks and salads or soup, and left without paying. The restaurant owner did not tell the police that the plaintiffs had left after waiting for over an hour for their meal and after complaining of the slow service and offering to pay for the drinks and food already consumed. *Moore*, 754 F.2d at 1340. The Court noted that the case

> essentially involves a dispute over the amount owed on a restaurant bill. It could almost be characterized as a dis-

---

**2.** Section 31.06, Presumption for Theft by Check, does not apply in this case. That section addresses only the issuance of a "bad check" not a "stop payment" on a check and was intended to explicitly allow a presumption of an intent to deprive or avoid payment under Section 31.03 (theft of property) and Section 31.04 (theft of service) when a check writer lacks sufficient funds in his or her bank account at the time he or she writes the check. It does not address a case like this where insufficiency of funds is not at issue.

pute over whether a breach of contract occurred between the parties ... [and] may have been avoided if the officers ... had used reasonable judgment and conducted a proper investigation, inquiring both as to the plaintiffs' presence in the restaurant and the dispute over the bill. Once explanations were provided, a further investigation could have been commenced in an attempt to resolve the dispute in a *reasonable* manner.

*Id.* at 1345–46 (emphasis added). Therefore, the Court, questioning the officer's failure to investigate more thoroughly and questioning the sufficiency of the restaurant owner's testimony for a finding of probable cause, submitted the issue of qualified immunity to the jury. *Id.* at 1347.[3]

In *Thomas,* the Fifth Circuit held that a city mayor, who also acted as the city's magistrate and municipal judge, lacked probable cause to believe a university president had committed a crime when he ordered sewer pipes cut in the course of a dispute between the university and the city. *Thomas,* 734 F.2d at 188. Because the mayor knew the university president had the pipes cut in an attempt to prevent the City's criminal trespass on university land in the course of the dispute, the Court held he lacked probable cause to believe a crime had been committed. *Id.*

Similarly, in *Baskin,* the Fifth Circuit held that a sheriff who ordered private property searched for marijuana lacked probable cause to obtain the search warrant because "he knew or should have known that the information that had been supplied to him was *based on personal grievances* ... [and] under the circumstances, [the sheriff] had a duty to check the allegations for distortion, misconception, or outright untruth." *Baskin,* 602 F.2d at 1207 (emphasis added).

■ In this case, unlike in *Moore* and *Baskin,* Officer Richter III, Officer Wil-

liamson, Richter Jr., and Chief Thomas knew of the existence of a civil dispute. Although the above cases were decided before *Malley v. Briggs* and thus the district courts did not have the issue of qualified immunity before them, the message is clear that the existence of a private civil dispute is an important factor in determining probable cause and may mean probable cause does not exist.

■ Had any of the current defendants in this case informed a fair and impartial magistrate of all the circumstances surrounding the dispute between Williams and the Richters and of the relationship between the Richters and the City of Luling Police Department, no reasonable police officer could reasonably have believed a warrant for Williams' arrest would issue, and, in the words of the Seventh Circuit Court of Appeals, "[t]his entire episode may have been avoided...." *See Moore,* 754 F.2d at 1345. Officer Nixon Richter III, Officer Keith Williamson, and Police Chief Travis Thomas are not entitled to qualified immunity for the arrest or detention[4] of Paul David Williams.

### 2. Unconstitutional Search and Taking of Property

■ Williams also claims in his complaint and pleadings that Officers Richter III and Williamson violated his constitutional rights when they searched his truck at the time of his arrest and when one of them stole approximately $2160 from his truck.

Although Williams requested that his truck be inventoried, he requested the inventory only in the event that Officer Richter and Officer Williamson had the truck towed. *Williams Deposition,* at 79–80. If Williams' arrest was illegal, neither officer had authority to tow the truck. Furthermore, as already mentioned, Caldwell County Judge Jarrett found no proba-

---

**3.** Prior to the Supreme Court's decision in *Malley v. Briggs,* the issue of qualified immunity was routinely sent to a jury to decide.

**4.** Although overnight detention might not be actionable in conjunction with a lawful arrest,

because the arrest may not have been lawful, and especially because the arrest was for a minor misdemeanor, summary judgment on the issue of illegal detention is also inappropriate. *See Moore,* 754 F.2d at 1350.

ble cause and granted Williams' motion to suppress in the State's case against Williams for possession of a weapon. *Transcript of Proceedings in State of Texas v. David Williams, No. 19,286, County Court at Law, Caldwell County,* at 65. (May 23, 1989) (Exhibit B to City Defendants; Dispositive Motion).

As already discussed, Officers Richter III and Williamson are not entitled to qualified immunity and there certainly exists genuine issues of fact concerning the legality of the search and whether or not money was taken from Williams' truck during the search.

### B. PRIVATE "CONSPIRATOR" WITH POLICE

Defendant Nixon Richter Jr. requests a summary judgment in his favor based on the lack of evidence of a conspiracy in this case. In his complaint, Williams alleges that Richter Jr. is liable under Section 1983 for conspiring with Officer Richter III, Officer Williamson, and Chief Thomas to deprive Williams of his constitutional right to be free from unlawful arrest. Richter Jr. denies that allegation and contends that he acted as a private individual and that his mere filing of a complaint does not cause him to act under "color of law".

■ As a preliminary matter, the Court finds that Richter Jr. is not entitled to qualified immunity as a matter of law. *See Wyatt v. Cole,* — U.S. —, — – —, 112 S.Ct. 1827, 1833–34, 118 L.Ed.2d 504 (1992) (reversing and remanding 928 F.2d 718, 721 (5th Cir.1991)); *Dennis v. Sparks,* 449 U.S. 24, 28–29, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980). Thus, the only issue before this Court at this time with respect to the charges of a Section 1983 conspiracy against Richter Jr. is whether or not genuine issues of fact concerning Richter Jr.'s involvement in a conspiracy to deprive Williams of constitutional rights exist.

■ A private individual may act under color of law for purposes of Section 1983 if "he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. at 27–28, 101 S.Ct. at 186. In a case of alleged false arrest, the police

must have acted "according to a preconceived plan and on the say-so of the private actor, not on the basis of their own investigation." *Bartholomew v. Lee,* 889 F.2d 62, 62 (5th Cir.1989). Merely bringing a complaint, or a police officer's reliance on that complaint, however, is not sufficient to make the private individual a "joint actor" or conspirator with the State officials. *See Dennis,* 449 U.S. at 28, 101 S.Ct. at 186; *Bartholomew,* 889 F.2d at 62.

■ Williams has alleged an abundance of facts which support the existence of a conspiracy between Richter Jr., Officers Richter III and Williamson, and Chief of Police Thomas. Richter Jr. is Officer Richter's father; Richter Jr. is the former police chief of Luling; Officer Richter made the offense report based on information he obtained from his mother Mrs. Richter at Richter's Garage; Officer Richter advised his parents, Mrs. Richter and Richter Jr., to see the judge about Williams' check; Officer Richter was the investigating and arresting officer and wrote up the complaint his father signed against Williams, Luling Police Regulations state that "[n]o member of this department shall investigate ... [nor] arrest in a matter in which such member or a person relating to such member by blood or marriage is involved"; *Thomas Deposition,* at 41–42; and Officer Richter worked part time for Richter Jr. and may have been a part-owner in Richter Jr.'s towing business.

There is a genuine issue of fact concerning the existence of a conspiracy between the defendants in this case to deprive Williams of his constitutional rights to be free from illegal arrest or detention.

### C. CITY OF LULING

Williams alleges that the City of Luling is also liable for depriving him of constitutional rights under Section 1983 based on the conduct of Chief Thomas, whom Williams describes as a "policymaker" for the City.

■ Again, as a preliminary matter the Court finds that the City of Luling is not entitled to qualified immunity as a matter

of law. *Owen v. City of Independence, Missouri,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980).

 A city may not, however, be held liable for the acts of its employees on the basis of *respondeat superior. Jett v. Dallas Indep. School Dist.,* 491 U.S. 701, 737–738, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Rather, execution of a municipal policy or custom must cause the constitutional deprivation in order for the city to be held responsible. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. In *Pembaur v. City of Cincinatti,* the Supreme Court further clarified that "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinatti,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). However, the policymaker must have final authority to establish municipal policy with respect to the action directed by, or taken by, him. *Id.* at 481, 106 S.Ct. at 1299. For instance, if Chief Thomas has discretion to fire a police officer but does not have final authority to establish when and how city employees may be hired or fired and he fires a police officer in an unconstitutional manner, the City of Luling will not be liable regardless of his authority to establish city policy in other areas. Finally, because Chief Thomas did not directly arrest Williams or issue the complaint or arrest warrant, Williams must establish that Chief Thomas was either personally involved in the constitutional deprivation or that there exists a sufficient causal connection between Chief Thomas's alleged wrongful conduct and the constitutional violation. *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987).

In other words, there are essentially two layers of liability to be considered here. First, is there a factual issue as to Chief Thomas's participation in a conspiracy to deprive Williams of his constitutional rights or his liability as a supervisor over Officer Richter or Officer Williamson? And, second, if so, is Chief Thomas a city policymaker and were the wrongful actions he took within the scope of his policymaking authority?

### 1. Liability of Chief Thomas

 As discussed above, Chief Thomas knew of the family relationships involved and the civil dispute between Williams and Richter's Garage. Chief Thomas reviewed the offense report and the arrest warrant for Williams and allowed Officer Richter to take part in the investigation and arrest of Williams despite official policy prohibiting an officer from participating in matters involving relatives. *See* Section B, *infra.* Chief Thomas had the authority and duty as police chief to prohibit Officer Richter from investigating the matter, writing up the complaint, and arresting Williams. Had Chief Thomas done so, or at least required Officer Richter to include information about the civil dispute in the complaint presented to the magistrate, Williams would probably not have been arrested or detained. A reasonable juror could conclude from this evidence that Chief Thomas conspired with the other defendants to violate Williams' constitutional rights or at least approved of and/or condoned their conduct. *See Sanders v. English,* 950 F.2d at 1159–60.

### 2. Municipal Liability

 The Court finds that for the purposes of ruling on the City of Luling's Motion for Summary Judgment, Chief Thomas is a policymaker for the City of Luling. In his deposition, Chief Thomas testified that he reviewed and adopted as his own the Luling Police Department rules and regulations, which were originally promulgated by earlier chiefs of police. Thomas Deposition, at 36. He is also in charge of writing written policies that Luling police officers are supposed to follow. *Id.* at 34. He further testified that he personally reviews each and every offense report and arrest report that is made.

 Whether or not a person is a municipal policymaker is a question of

**1530**

state or municipal law to be determined by the Court. *Jett,* 491 U.S. at 737–738, 109 S.Ct. at 2723; *Crowder v. Sinyard,* 884 F.2d 804, 830 (5th Cir.1989); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 125–126, 108 S.Ct. 915, 925–26, 99 L.Ed.2d 107 (1988). In cases where a chief of police has testified that he set police department policies and the defendant city has not raised an issue to the contrary, the chief of police has been found to be a city policymaker with respect to police activities. *See e.g., Crowder,* 884 F.2d at 829; *Rosenstein v. City of Dallas, Tex.,* 876 F.2d 392, 397 (5th Cir.1989). Chief Thomas having testified to such effect, and there being no contradictory evidence, the City of Luling cannot, at this time, claim that Chief Thomas is not in fact a policymaker for the City of Luling. Furthermore, since Williams alleges that Chief Thomas both conspired to deprive Williams of his constitutional rights by causing him to be arrested without probable cause and failed to prevent Officer Richter and Officer Williamson from violating Williams' constitutional rights, there is no question that any wrongful conduct by Chief Thomas would have occurred within the scope of Chief Thomas's policymaking authority.

Until and unless further evidence shows Chief Thomas is not in fact a policymaker for the City of Luling, if Police Chief Thomas is found liable under Section 1983, the City of Luling will also be liable.

## V. STATE TORT CAUSES OF ACTION

■ In addition to his Section 1983 constitutional claims, Williams alleges that the defendants committed several state law torts against him: malicious prosecution, abuse of process, and false imprisonment. Genuine issues of fact exist with regard to each of these state claims over which the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367.

5. The Court notes that the defendants waited until a full year had passed and virtually all of the discovery (avoidance of which is a significant purpose of qualified immunity) had been completed, before they filed motions for summary judgment raising the issue of qualified immunity.

## VI. CONCLUSION

In accordance with the above opinion, the Court finds that Officer Richter III, Officer Williamson, and Chief Thomas are not entitled to qualified immunity.[5] The Court further finds that genuine issues of fact exist with regard to all of Plaintiff Williams' causes of action.

Therefore, the Court ORDERS that the City Defendants' Motion for Summary Judgment, filed on December 9, 1991, and Defendant Richter's Motion for Summary Judgment, filed on December 18, 1991, are DENIED.