VOLLENWEIDER, Judge:
A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of a two-month unauthorized absence terminated by apprehension, two specifications of dishonorably failing to maintain sufficient funds, two specifications of making and delivering worthless checks with intent to defraud, and one specification of dishonorably failing to pay a just debt, in violation of *599 Articles 86, 123a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 923a, and 934. The appellant was sentenced to a bad-conduct discharge, forfeiture of $767.00 pay per month for 12 months, confinement for 12 months, and reduction to pay grade E-l. The convening authority approved the sentence as adjudged.
In his sole assignment of error, the appellant contends that he may not be convicted of dishonorably failing to maintain sufficient funds under Article 134, UCMJ, when he stopped payment on a check before his bank returned it for insufficient funds. The appellant asks this court to set aside the findings as to that charge and specification, and reassess his sentence.
We have examined the record of trial, the appellant’s sole assignment of error, and the Government’s response. We conclude that the findings and the sentence are correct in law and fact and that no error was committed that was materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).
Improvident Plea
The appellant claims that his guilty plea to failure to maintain funds in violation of Article 134, UCMJ, under Additional Charge I was improvident. We disagree.
A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. Art. 45(a), UCMJ, 10 U.S.C. § 845; United States v. Care, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969). Before accepting a guilty plea, the military judge must explain the elements of the offense and ensure that a factual basis for the plea exists. United States v. Faircloth, 45 M.J. 172, 174 (C.A.A.F.1996); United States v. Davenport, 9 M.J. 364, 367 (C.M.A.1980). Acceptance of a guilty plea requires the accused to substantiate the facts that objectively support his plea. United States v. Schwabauer, 37 M.J. 338, 341 (C.M.A.1993); Rule for Courts-Martial 910(e), Manual for Coukts-Martial, United States (2002 ed.). The accused “must be convinced of, and able to describe all the facts necessary to establish guilt.” R.C.M. 910(e), Discussion.
A military judge may not “arbitrarily reject a guilty plea.” United States v. Penister, 25 M.J. 148, 152 (C.M.A.1987)(citing United States v. Johnson, 12 M.J. 673 (A.C.M.R.1981)). The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991). Such rejection must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty, and the only exception to the general rule of waiver arises when an error materially prejudicial to the substantial rights of the appellant occurs. Art. 59(a), UCMJ; R.C.M. 910(j). Additionally, we note that a military judge has wide discretion in determining that there is a factual basis for the plea. See United States v. Roane, 43 M.J. 93, 94-95 (C.A.A.F.1995). In considering the adequacy of guilty pleas, we consider the entire record to determine whether the requirements of Article 45, UCMJ, R.C.M. 910, and Care and its progeny have been met. United States v. Jordan, 57 M.J. 236, 239 (C.A.A.F.2002).
The appellant was originally charged with uttering a check with intent to defraud under Article 123a, UCMJ. However, pursuant to a pretrial agreement, he pled guilty to the lesser included offense of dishonorable failure to maintain funds under Article 134, UCMJ. During the providence inquiry, the appellant admitted that he bought a used car for $9,957.47, paying with a check.[1] He knew at the time he signed the sales contract and wrote the cheek that he had insufficient funds in his bank account. He admitted that he had no expectation of receiving funds since he was in an unauthorized absence status and was not working. The appellant claimed that he believed there was a slim chance that he might later obtain the neces *600 sary funds before the check was presented to his bank for payment.
After signing the contract and giving his check to the dealer, the appellant took possession of the car. He discovered a problem with the car’s CD player the same day, and took the car back to the dealer for repair. The dealer gave the appellant a loaner car to use while the CD player was being fixed (the appellant was satisfied that the dealer would repair the CD player).
The appellant did not secure additional funds with which to pay the check. Therefore, two days after writing the check and taking possession of the car, he ordered his bank to stop payment on the check. He did so because he knew that the check would be dishonored for insufficient funds.[2] Despite stopping payment on the check, the appellant continued to drive the loaner car for another two days until he surreptitiously returned it to the dealer’s lot late at night. The appellant did not notify the dealer that he had stopped the check, and the appellant made no effort to renegotiate or get out of his purchase contract. Both counsel noted on the record that there was no cooling-off period under California law that would have allowed the appellant to return the car to the dealer without penalty within a certain period after sale.
The elements of dishonorably failing to maintain sufficient funds under Article 134, UCMJ, are:
(1) That the accused made and uttered a certain cheek;
(2) That the check was made and uttered for the purchase of a certain thing, in payment of a debt, or for a certain purpose;
(3) That the accused subsequently failed to place or maintain sufficient funds in or credit with the drawee bank for payment of the check in full upon its presentment for payment;
(4) That this failure was dishonorable; and
(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
Manual for Courts-Martial, United States (2002 ed.) Part IV, ¶ 68b.
In this case, it is clear and unquestioned that the appellant’s admitted conduct satisfied the first two elements. He wrote and delivered a check to obtain a car, and he received the car. It is also clear, in regard to the third element, that the appellant at no time had sufficient funds in his account to pay the check, and made no effort to deposit sufficient funds into his account. Therefore, there would be insufficient funds in his account whenever it was presented for payment. The inquiry then turns to the fourth and fifth elements of the offense.
The appellant admitted that at the time he wrote and delivered the check, he knew he had neither sufficient funds nor any reasonable expectation that he would have sufficient funds in his account to pay the check when presented. In fact, he wrote the check while he was an unauthorized absentee in a no-pay status, when he had no funds in his account, and while he was not expecting to be paid. He told the car dealer that the check was good, and represented to the dealer that he was on active duty in the Navy in order to persuade the dealer to accept the check. He continued to drive the car for two days after stopping payment on the check. He failed to tell the dealer that he had stopped payment on the check. The check was never paid. The appellant never sought to negotiate a new payment plan with the dealer. Under these facts, the military judge found the final two elements fulfilled. We agree that all five elements of this offense were established by the appellant’s admissions in the providence inquiry.
The appellant now argues, for the first time on appeal, that since he put a stop payment order on the cheek, he was insulated from prosecution for the offense to which he voluntarily pleaded guilty, and that his plea to that offense was improvident. We *601 find the appellant’s arguments unpersuasive and contrary to the law.
It is the appellant’s contention that a stop payment order prevents a check from being “dishonored.”[3] He apparently is reading into MCM, Part IV, ¶ 68, a nonexistent element that the bank dishonored the check, and confuses the element that requires the accused’s failure to maintain sufficient funds be dishonorable with “dishonoring” of the check by the bank.[4]
The appellant’s actions were dishonorable when he failed to deposit sufficient funds into his account for payment of the check upon its presentment. His behavior was dishonorable when he kept the car after stopping payment on the check. He acted dishonorably when he stopped payment on the check with no intention to otherwise make good on the promise to pay that his check represented, even though he had no dispute with the ear dealer. The appellant’s conduct was clearly service discrediting, as he used his military status to obtain the car and to persuade the dealer to accept his check.
Had the appellant allowed the check to be dishonored for insufficient funds (as would have happened if the payee had presented the check before the appellant stopped payment), he would be guilty of this offense because he admitted that he knew that he would not have sufficient funds in his account on presentment. The appellant now claims that since he stopped payment on the check, and the check was dishonored by the bank for stop payment rather than for insufficient funds, as a matter of law he could not be found guilty of the Article 134, UCMJ, offense to which he plead guilty.[5] The sole question in this case is whether stopping payment on a check with the intent to avoid it being dishonored for insufficient funds is a defense to this crime.
The appellant asks us to distinguish between a situation where a check is rejected for insufficient funds upon presentment, and a situation where a check is rejected upon presentment due to a stop payment order unrelated to any consumer dispute. In the instant case, that would amount to a distinction without a difference. There were insufficient funds in the appellant’s bank account when the check was presented. Therefore, the check would not have been honored upon presentment whether or not a stop payment order had been made. The payee was not going to get any money in any event. The essence of the facts in this case, as related by the appellant himself, is that the stop payment order did not prevent payment—the lack of sufficient funds did. The appellant’s obligation to the dealer to make good on his check, at the time he stopped payment on the check on 26 May 2003, was unchanged. Nonpayment was the direct result of the appellant’s misconduct, which evinced obvious bad faith and intent not to pay the check that he had promised would be honored. The appellant’s behavior was a clear trad of deceit, evasion, and false promises, on which *602 the stop payment order was merely a trail marker, leading to deliberate nonpayment.
We hold that stopping payment on a check without legal justification does not prevent conviction for dishonorable failure to maintain sufficient funds under Article 134, UCMJ, where, as here, there is no dispute with the payee and where the accused knows that there are insufficient funds in the account, and knows he has no prospects for new deposits. To hold otherwise would create a gap in the law’s protection of the public, between the time a check is uttered with insufficient funds (the Article 123a offense) and when the check is actually physically presented to the bank for payment. The effect on the payor bank is the same in either circumstance: it suffers no loss of funds. The consequences to the payee are also the same: the payee does not get the funds to which he is entitled due to the appellant’s wrongful actions. The law, as we interpret it, should protect the innocent payee from the dishonorable actions of a service member in a case such as this, and we believe that the law as set forth in MCM, Part IV, ¶ 68 does so. The appellant’s guilt should not depend on whether he wins a race to the bank against the payee.
There is no substantial basis in law or fact for questioning the appellant’s pleas. The appellant’s pleas were provident.[6] The appellant’s pleas may also be upheld under the Felty doctrine.[7] Under the Felty doctrine, we may “uphold a conviction when the providence inquiry clearly establishes guilt of an offense different from but clearly related to the crime to which the accused has pleaded guilty.” United States v. Wright, 22 M.J. 25, 27 (C.M.A.1986). In this case, the providence inquiry also indicates that the appellant was guilty of the closely related offense of dishonorable failure to pay just debts under Article 134, UCMJ. See United States v. Call, 32 M.J. 873, 876 (N.M.C.M.R.1991); United States v. Garnick, No. 200100440, 2002 WL 31914841, (N.M.Ct.Crim.App.2002). See also MCM, Part IV, ¶ 68, which indicates that the dishonorable conduct required for the offense of dishonorable failure to maintain sufficient funds is similar to the conduct for dishonorable failure to pay just debts. The other principles of MCM, Part IV, ¶ 71, apply as well.
We have also considered the effect on the appellant’s sentence if the questioned charge was set aside. In light of the number and severity of the remaining offenses, the appellant’s service record, the evidence offered in aggravation and extenuation and mitigation, and the fact that the military judge considered the injury to the car dealer slight when assessing sentence, we are fully convinced that the sentence would, and should, remain the same.
Conclusion
We affirm the findings and the sentence as approved by the convening authority.
Senior Judge CARVER and Judge GEISER concur.

. Four of the five specifications to which the appellant pleaded guilty involved purchasing four different vehicles and not paying for them. Three of these instances, including the one discussed herein, occurred during a period of unauthorized absence that was terminated by apprehension.

. It is unclear in the record why the appellant preferred to stop payment rather than allow the check to be dishonored due to insufficient funds. The net effect on his obligation to pay for the car, and the harm to the car dealer, would be the same in either event.

. The appellant cites United States v. Bullman, 56 M.J. 377 (C.A.A.F.2002) to support his position. The Court of Appeals for the Armed Forces reconsidered its decision, and came to a different conclusion. United States v. Bullman, 57 M.J. 478 (C.A.A.F.2002)(summary disposition)(affirming the decision by the Air Force Court of Criminal Appeals).

. The appellant cites several non-military cases. The cases cited by the appellant are clearly inapposite. All were civil cases alleging various forms of wrongful prosecution. In each case, a stop payment order was issued by the plaintiff because of some dispute with the payee. None involved insufficient funds. See Mason v. Rainbow Rentals, 2004 WL 102873, 2004 Ohio App. Lexis 253 (Ohio Ct.App.2004)(unpublished)(dispute over treatment by furniture rental store; different statutory language); Williams v. City of Luling, 802 F.Supp. 1518 (W.D.Tex.1992), aff'd, 12 F.3d 209 (5th Cir.1993)(dispute about damage caused by towing company; issue was qualified immunity of city officials; different statutory language); Conway v. Village of Mount Kisco, 750 F.2d 205 (2d Cir.1984)(dispute over car repairs; different statutory language); Lawson v. Wilkinson, 60 Tenn.App. 406, 447 S.W.2d 369 (1969)(dispute over the purchase of a horse; statutory language unknown); and Weber v. Leuschner, 240 Cal.App.2d 829, 50 Cal.Rptr. 86 (1966)(dispute about produce damaged in storage; statutory language unknown). There were no disputes in this case that led to the appellant's stop payment order.

. While stopping a check as a response to a consumer dispute may in some circumstances be perfectly legal, we do not here address that situation as the facts herein do not present such a scenario.

. Counsel are advised, when making pretrial agreements and preparing charges, to be aware of the differences in the offense of making a bad check without sufficient funds under Article 123a, UCMJ, and the offense of making a bad check by dishonorably failing to maintain sufficient funds under Article 134, UCMJ. While the Article 134 offense is listed in MCM, Part IV, V 49d(l) as a lesser included offense of an Article 123a offense, there are important distinctions between the two. In the Article 123a offense, the crime is complete when the bad check is delivered, where the accused knew at that time he did not have, or would not have at presentment, funds sufficient to pay the check. Actual presentment of the check is not required. The focus of the Article 123a offense in on the accused's intent at the time the check was delivered.
For the Article 134 bad check offense, there need be no intent to defraud at the time the check was written and delivered. The accused need not know at that time that he did not or would not have sufficient funds upon presentment. The offense lies in the accused's conduct after the check was delivered.

. United States v. Felty, 12 M.J. 438 (C.M.A. 1982).