**Ernest Lee GIBSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60129.**

Court of Criminal Appeals of Texas, Panel No. 3.

Oct. 22, 1980.

On Rehearing En Banc Nov. 10, 1981.

---

Douglas H. Parks, Dallas, for appellant.

Henry Wade, Dist. Atty., and Steve Wilensky, Bob Smith, and Brady Sparks, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before PHILLIPS, TOM G. DAVIS and DALLY, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for theft by check of services of a value of over $200 (V.T.C.A. Penal Code §§ 31.04 and 31.06). Appellant was indicted under the habitual offender statute. Punishment was assessed at life imprisonment.

The conviction in this case must be set aside because the evidence is insufficient to support the allegations in the indictment. The indictment alleged, in pertinent part, that appellant:

> ... with intent to avoid payment for services, namely: food, lodging and beverage, services of the Holiday Inn—DFW Airport South, that he knew were provided by the said Holiday Inn only for compensation, did knowingly and intentionally secure performance of said services of the value of more than $200 but less than $10,000 by deception, to-wit: did then and there present in payment for said services to Karen Miles, the owner thereof, a check for which the said defendant had no account at the bank on which the check was drawn, ...

In *Cortez v. State*, 582 S.W.2d 119 (Tex. Cr.App.1979), the Court stated as follows:

> The indictment in this case alleged that the *deception* by which appellant secured performance of the service allegedly stolen was accomplished by means of a certain check (see Sec. 31.06, supra). An examination of the definitions of "deception" in Sec. 31.01(2) ... reveals that in all but one instance (which is not pertinent here) the deception must be such as is likely to affect the judgment of another in the transaction. Obviously any deception that occurs after the other person has completed performance of the service allegedly stolen would not meet this requirement: once the other person has completed the performance of his obligations in the transaction, any later deception would be incapable of affecting retrospectively his judgment in what he has already completed.

> The facts of this case measured against the definition of deception reveal that appellant's conduct of issuing and passing the check could not have affected the judgment of the complaining witness in the delivery of the services allegedly stolen, because the check was not issued and passed until after performance of the services had been completed. Although the contract for performance of those services included a promise by appellant to pay for them on completion, and this promise in the contract could have constituted deception under Sec. 31.01(2)(E), supra, the indictment did not allege deception by a promise to pay that appellant did not intend to perform or knew would not be performed. The indictment alleged deception by issuing and passing a certain check. As shown above, the evidence reveals that this alleged conduct could not be deception that secured performance of the allegedly stolen services in this case. Therefore the evidence is insufficient.

The conviction is set aside and the judgment is reformed to show an acquittal.

The facts in the present case are indistinguishable from those in *Cortez, supra;* accordingly, *Cortez* must control the disposition of the instant case. At appellant's trial the evidence showed that he presented a check to a hotel for services previously rendered. As in *Cortez,* appellant's conduct in presenting this check "could not have affected the judgment of the complaining witness in the delivery of the services allegedly stolen" because the check was presented *after* the services had been rendered. The indictment in the present case alleged deception by presenting a certain check. The conduct that the State proved at trial could not be the deception that secured performance of the allegedly stolen services. Therefore the evidence is insufficient.[1]

The conviction is set aside and the judgment is reformed to show an acquittal.

TOM G. DAVIS, Judge, concurring.

I concur in the finding that the evidence is insufficient to support the allegations in the indictment. However, in order to understand this conclusion, it is necessary to set out the evidence produced at trial with regard to the manner of deception employed to secure performance of the services.

Charles Miller testified that he was an Assistant Front Desk Manager for the Holiday Inn Motel at the Dallas-Fort Worth Regional Airport. Miller stated that on November 18, 1977, appellant entered the motel and registered to rent a room. After filling out a registration card, Miller informed appellant that motel policy required that upon check-in, a guest must either pay one night's room rent in advance or leave an imprint of an accepted credit card. Appellant informed Miller that he expected the arrival of a friend later that evening and that the friend would leave his credit card at the desk. Miller then gave appellant a room key and a membership card to a club at the motel. No credit card was ever delivered to the front desk as appellant had promised.

Three days later, appellant had yet to pay the motel for any of the services which had been rendered. Miller related that he saw appellant in the motel lobby and spoke with him concerning the nonpayment in the following manner:

"A. It looked like he was going from his room to the restaurant, and like I said, I was behind the desk and I asked him to come over there, I needed to talk to him for a minute. He came by and I says, 'Sir, your bill is getting rather high. We will have to have a credit card or a check or cash payment on it sometime in the near future.' He says, 'That is fine.' He said that he would get with me or someone at the desk later on that day and settle up.

"Q. He said he would pay that day?

"A. Yes, sir."

Ralph E. Herz testified that he was the manager of the Holiday Inn motel in question. Herz stated that appellant registered on Friday afternoon and that by Saturday, his motel bill was in excess of $190.00. Herz approached appellant Saturday morning concerning the need to have some payment or security on his motel account. Appellant told Herz "I will take care of it." By Saturday evening appellant had not yet paid for any of the services and Herz locked appellant out of his room. Appellant was let back into his room upon his assurance that the bill for services rendered at the motel would be paid.

By Sunday morning, appellant's bill at the motel was in excess of $290.00. Herz approached appellant again concerning payment and appellant said that he would go to

---

1. The dissent incorrectly contends that the indictment fails to allege an offense. Suppose the evidence had shown that appellant secured *performance* of the services by presenting a check *before* the services were rendered. Such proof would establish the allegations in the indictment and would satisfy the requirements for "deception" as that term is construed in *Cortez.* It follows that the conduct alleged in the indictment is sufficient to state an offense. The present case involves not a fundamentally defective indictment, but a failure of proof.

a bank on Monday morning and cash a check to pay his motel bill. Herz had not received any type of payment by Monday night and once again had appellant locked out of his room. Upon discovering that he had been locked out of his room, appellant tendered a check in the amount of $423.48 to the motel. This check was drawn on the Sabine State Bank and Trust Company in Zwolle, Louisiana. The following morning, Herz called the police after speaking with officials at the Sabine Bank concerning appellant's check.

Don Zick testified that he was Vice President of the Sabine Bank. Zick stated that the check which appellant presented to the Holiday Inn was a counter check. Zick related that such checks are made available in the bank lobby to regular checking account customers who are not using their personalized checks. Zick stated that appellant did not have any type of account with the bank.

The instant prosecution was for theft of service pursuant to V.T.C.A. Penal Code, Sec. 31.04(a)(1). The elements of that offense are as follows:

1. A person;
2. With intent to avoid payment for service known to be provided only for compensation;
3. Intentionally or knowingly;
4. Secures performance thereof by;
5. Deception.

The indictment in the instant case alleged that appellant secured performance of the service by deception. Such deception was alleged to have been by means of a check drawn on a bank in which appellant did not have an account.

The evidence at trial revealed that appellant secured performance of the service from Holiday Inn by means of his repeated assurances that he would "take care of the bill." This deception commenced upon registration when he assured Miller that a friend would leave a credit card imprint at the front desk of the motel. The deception continued for three days as appellant assured Herz that he would take care of the

bill in one way or another. Upon these repeated assurances, the motel continued to provide services in the form of food, lodging, and liquor to appellant. By the time appellant tendered the worthless check, the motel had provided services to him in excess of $400.00.

V.T.C.A. Penal Code, Sec. 31.01(2) defines "deception" in the following manner:

"(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

"(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

"(C) preventing another from acquiring information likely to affect his judgment in the transaction;

"(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

"(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed."

As we noted in *Cortez v. State*, 582 S.W.2d 119, such "deception" must be such as is likely to affect the judgment of another in the transaction. The indictment in the instant case did not allege that appel-

lant secured performance of the services by deception in making repeated promises to pay or "take care of" the motel bill that he did not intend to perform or knew would not be performed. Rather, the form of deception alleged related to appellant's act of passing a worthless check *after* the services had been rendered by the motel.

This is not to say that the issuance of a worthless check could not be the deception employed to secure the performance of a service. If a merchant required prepayment or a deposit for services to be performed and such services were rendered after the defendant created a false impression of fact as to the validity of a check given for such prepayment or deposit, then issuance and passing of the check would constitute "deception" which would have affected the judgment of the merchant in the transaction. In *Littlefield v. State*, 586 S.W.2d 534 (Tex.Cr.App.), such a factual situation was present although it did not form the basis of revocation of the defendant's probation. In that case, the defendant tendered a check in the amount of $50.00 to serve as a deposit on an automobile he desired to lease. When the automobile was delivered, the defendant tendered a second check in the amount of $417.20 for the balance of the money due at the beginning of the lease period. Both checks were dishonored and the defendant retained possession of the automobile.

The evidence in this case does not support the allegation that the services were secured by deception in issuing a worthless check. I concur in the reversal of the judgment.

DALLY, Judge, dissenting.

I dissent to entering a judgment of acquittal. The judgment should be reversed not because the evidence is insufficient but because the indictment fails to allege an offense, and the prosecution under this indictment should be dismissed, but the judgment of acquittal is not proper. The appellant could then be prosecuted under a properly drawn indictment.

Both the majority and the concurring opinion rely on *Cortez v. State*, 582 S.W.2d 119 (Tex.Cr.App.1979). In that case it was correct to reverse the judgment, but it was reversed for the wrong reason. In this case as in *Cortez v. State*, supra, the indictment alleges that a check, for which there were insufficient funds on deposit, was given in payment for services already rendered. The check was not given before the delivery of the services to induce their delivery. Therefore, the offense denounced by V.T. C.A. Penal Code, Sec. 31.04 was not alleged as is explained in *Cortez v. State*, supra.

In this case, as in *Cortez*, the State proved exactly what was alleged, but those allegations failed to allege an offense. In *Cortez v. State*, supra, it is said:

" . . . the indictment did not allege deception by a promise to pay that appellant did not intend to perform or knew would not be performed. The indictment alleged deception by issuing and passing a certain check. As shown above, the evidence reveals that this *alleged* conduct could not be deception that secured performance of the allegedly stolen services . . ." [emphasis added.]

Since the *alleged* conduct could not be deception that secured performance of that allegedly stolen services an offense was not alleged; so rather than drawing the conclusion that evidence was insufficient the conclusion that should have been drawn was that the indictment did not allege an offense. Since neither the indictment in *Cortez v. State*, supra, nor in this case alleged an offense, the jurisdiction of the court was not invoked. If the court did not have jurisdiction, jeopardy did not attach; it is fundamental that jeopardy cannot attach unless there is a valid indictment giving the court jurisdiction. *Houston v. State*, 556 S.W.2d 345 (Tex.Cr.App.1977); *Thompson v. State*, 527 S.W.2d 888 (Tex.Cr.App.1975); *Ward v. State*, 520 S.W.2d 395 (Tex.Cr.App. 1975); *McAfee v. State*, 363 S.W.2d 941 (Tex.Cr.App.1963); *Van Arsdale v. State*, 149 Tex.Cr.R. 639, 198 S.W.2d 270 (1946); *Grisham v. State*, 19 Tex.App. 504 (1885).

Therefore, if the indictment is not valid an acquittal should not result. The proper remedy would have been in *Cortez* and the proper remedy here is to dismiss the indictment. The State may then if it desires, secure a good indictment and try the appellant on the new indictment. I dissent to the entering of a judgment of acquittal in this case.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

On original submission a divided panel of this Court held that the evidence was insufficient to support the allegation that the appellant secured services from the Holiday Inn-DFW Airport South by deception in issuing a worthless check. Relying upon *Cortez v. State*, 582 S.W.2d 119 (Tex.Cr. App.1979), a majority of the panel concluded that the act of issuing the check could not have been the deception that secured performance of services already rendered. On rehearing the State correctly points out that the appellant, after he issued the check in question, incurred additional charges for services rendered by the Holiday Inn in the amount of $142.58. The State contends that by issuing a check to the Holiday Inn appellant confirmed the false impression that he intended to pay for his entire bill for services rendered by the Inn. That false impression, the State asserts, affected the judgment of the Holiday Inn personnel in the transaction with appellant that *followed* his issuance of the check. We granted the State leave to file a motion for rehearing in order to consider the notion thus advanced by our State Prosecuting Attorney. To put it in context, some recapitulation is appropriate.

The original theory of this prosecution is stated by the grand jury in its indictment: With the intent to avoid payment for services rendered by the Holiday Inn-DFW Airport South for compensation, appellant did "*secure* performance of said services," valued between $200 and $10,000, by deception in that he "did then and there present in *payment* for said services . . . a check for which . . . [he] . . . had no account at the bank on which the check was drawn." [1] This purports to allege an offense denounced by V.T.C.A. Penal Code, § 31.-04(a)(1),[2] aided by the legislative presumption for theft by check in *id.* § 31.06,[3] and carefully read, without regard for evidence actually adduced,[4] it does.

However, the proof, most now seem to agree, shows appellant presented the worthless check not to "secure" performance of services, but well after they had been rendered—over the course of some seventy two hours from a Friday afternoon to the following Monday evening. If *Cortez v. State*, 582 S.W.2d 119 (Tex.Cr.App.1979) is dispositive, then the evidence is insufficient to support the verdict of guilt and the judgment of conviction.[5]

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. That provision reads:
   "(a) A person commits theft of service if, with intent to avoid payment for service that he knows is provided for compensation:
   (1) he intentionally or knowingly secures *performance of the service by deception, threat, or false token*. . ."

3. In pertinent part, if one "secured performance of service by issuing or passing a check" without sufficient funds on deposit for its full payment, "his intent . . . to avoid payment of service under Section 31.04. . . is presumed" if "he had no account with the bank . . . at the time he issued the check. . ."

4. Axiomatic is the proposition that an indictment must be tested for validity by itself as a pleading, and can neither be supported nor defeated as a pleading by evidence; e. g., *Brasfield v. State*, 600 S.W.2d 288, 294–295 (Tex.Cr. App.1980); see also *Posey v. State*, 545 S.W.2d 162, 163 (Tex.Cr.App.1977): "The pleading must state facts which if true show a violation of the law."

5. The writer finds that the concurring opinion of Judge Tom Davis on original submission correctly outlines and analyses the facts of the matter, and though I agree the "deception" that secured performance of the services from the inn commenced when appellant presented himself to the registration desk clerk, Charles Miller, I believe it actually started when appellant created the impression of being, in the words of

In his motion for rehearing our State Prosecuting Attorney undertakes to distinguish *Cortez v. State*, supra, by injecting a new theory in the case. Thus, he views and characterizes what happened from the time appellant checked in on Friday until he was arrested Tuesday—he never checked out—as a "continuous transaction" that had not been completed when appellant issued the worthless check. He argues that presentation of the check Monday evening caused "the people at the Holiday Inn" to provide appellant with more services after the check was issued, and the total amount of compensation for services rendered far exceeded the sum of the check. Suffice to say that from their argument to the jury below and in their appellate brief on original submission the prosecuting attorneys never so much as hinted such was a viable theory, and with the good reasons we are about to state.[6]

Monday afternoon appellant returned to the motel to find that, as on Saturday evening,[7] he had again been locked out of his room for nonpayment of accrued charges.

He went to the desk and, as Mary Claremont described it, "he was extremely hostile and antagonistic and very upset about it and demanding that he get in his room or he would call his lawyer and create problems for us..." From there appellant went unannounced through an outer office and intruded into a meeting Herz was having with a senior partner of the Holiday Inn firm; "overbearing and angry," appellant denounced the inn as "a very terrible place" and upon being introduced to him proceeded to tell the senior partner "how badly he was mistreated." When asked whether he had taken care of his bill, appellant turned and while walking out stated that he was going to take care of it by giving a check and *checking out of the inn*.[8]

Karen Miles, another desk clerk, testified that "[s]ometime later on that evening" appellant returned to the desk and handed her a blank check which she partially completed in her own hand by writing in the date and amount due and some identifying data, after which appellant signed it. Releasing the check to Miles, and in the presence of

motel manager Herz, "a big businessman" by pretending there should have been a room reservation for him, requesting a corporate rate in the name of a company not listed in the corporate rate directory and justifying his leaving blank whether the account he was about to obligate himself to pay for would be handled by cash, check or credit card with the misrepresentation that a friend who was coming in later would provide a credit card to pay the account. Admittedly taken in by all this, Miller "went ahead and gave him the key ... and his club card membership and told him to have a nice stay." Thus, it may be fairly said that the monetary wound later suffered by the injured party here was, in some measure, selfinflicted.

6. Now, contrary to every other position taken in this case, the concurrence would separate the scenario into acts one and two, the curtain rising on the second with presentation of the check by appellant Monday evening. Thus, the opinion theorizes somewhat like the State Prosecuting Attorney, presenting the check confirmed an impression likely to affect the judgment of Holiday Inn personnel. The problem is there is no direct testimony to support this new notion. Indeed, a reasonable finding by the jury, consonant with the argument pressed on *its* members by the prosecuting attorneys, is that the "second act" had little or no bearing on the issue they were called on to resolve.

7. On Saturday morning when Herz first approached appellant about payment of his outstanding charges amounting to over a hundred dollars, as they walked on into his guest room Herz mentioned that the inn must have some payment or some security on the account. Appellant produced a purported financial statement and asked, "Do you know who I am?" The statement, introduced as an exhibit, lists assets totalling almost eight and one half million dollars—and no liabilities. Turning to change his clothes, appellant assured Herz that as soon as he was finished, he would come make some arrangements, would take care of the bill. Not only did he not do so, he promptly left the inn. Discovering this, Herz double locked the door so that appellant must necessarily have to present himself to someone in charge in order to reenter.

8. Though it is quite true that appellant did not check out Monday evening—in fact he never did—there is not one line of testimony that Herz ever spoke to appellant again. Miller, independently of Herz, also spoke once Monday afternoon to appellant about paying his bill "sometime in the near future," but had no knowledge of subsequent conversations between Herz and appellant, and was not asked about the check.

Claremont, appellant stated that if they "tried to check with the bank to see if he had funds or ... did any checking with the bank, he would stop payment on the check." Claremont, presumably with check in hand, went to Herz and as a consequence of a conversation with him—which, on objection, was withheld from the jury—she returned to the desk and asked Miles "to call the check" through a Telecredit service to validate it. Miles did "attempt to verify the check;" though a sustained objection blocked her from stating the result, the jury almost had to infer that it was inconclusive, for first thing the very next morning Herz telephoned the bank on which it was drawn and based on what he learned in that conversation immediately called the affected police department and the F.B.I.[9] To be recalled is appellant was arrested that day at the inn.

█ So, the new theory fails in two respects. First, the jury was not authorized to find appellant guilty unless the services secured by presenting the check to Miles were of the value of more than $200. Yet, the argument now is that the jury could have reasonably found that which it simply was not permitted to find. Secondly, the various efforts on Monday evening to determine the worth of the check in question and the early Tuesday morning investigation continued by Herz refute the notion espoused now on rehearing. Patently, Herz did not at all regard the matter settled Monday night but merely chose to avoid further confrontation until validity of the

check could be ascertained through a direct channel. What affected his judgment Monday night was not receipt of a questionable check but the bluster of appellant in making a general nuisance of himself. Unable to verify the worth of the check that time of night, what is a discreet innkeeper to do with a difficult guest but wait until regular banking hours the following morning?[10] From the foregoing analysis we must conclude that, even if authorized by the charge of the trial court to do so, the evidence is insufficient for a jury to conclude that receipt of the check placated them to the extent of inducing Herz and his staff to continue to perform services for appellant, secure in the thought that past services had been paid and future performance would be too.[11]

Therefore, the judgment rendered by the panel on original submission should not be disturbed. Accordingly, the State's motion for rehearing is denied.

Before the court en banc.

## CONCURRING OPINION ON STATE'S MOTION FOR REHEARING

ROBERTS, Judge.

I concur in the holding that the evidence was insufficient to support the conviction, simply because the State did not prove what the indictment alleged. The indictment charged that the appellant:

"with intent to avoid payment for services, namely: food, lodging and beverage,

---

9. After the first attempt at verification, Claremont approached appellant in the bar and asked to look once more at his driver's license. He refused, saying he was not going to give it to her "and get arrested again"—a remark that was never explained and that appellant denied making. Rebuffed, she returned one more time to talk to Herz about appellant, presumably reporting what had occurred in the bar. She never saw appellant again until trial. The record does not show that the check in question was ever deposited and it is undisputed that it was never presented for payment. (That it was drawn on a bank in Louisiana no doubt prompted Herz to alert the F.B.I.)

10. Indeed, just as reasonable as the hypothesis now advanced is the thought that the check

was retained without further ado so that if it turned out the next morning to be worthless Herz would then have a solid basis for summoning law enforcement authorities to take appellant away from the inn. That, of course, is precisely what happened.

11. The concurring opinion charges that the Court is acting in the role of factfinder and evidence weigher, but what we are addressing is a motion for rehearing that presents a new theory for upholding the conviction. Our purpose has been to assay that contention in order to determine whether the panel on original submission correctly decided the issue. For the reasons developed *ante*, we conclude it did.

services of the Holiday Inn—DFW Airport South, that he knew were provided by the said Holiday Inn only for compensation, did knowingly and intentionally *secure performance of said services of the value of more than $200* but less than $10,000 by deception, to-wit: did then and there present *in payment for said services* to Karen Miles, the owner thereof, a check for which the said defendant had no account at the bank on which the check was drawn."

The emphasized language committed the State to prove three things (among others):

(1) the deception of presenting a worthless check secured performance of the services;

(2) the secured services were worth more than $200; and

(3) the worthless check was presented in payment for the same services ("said services").

The proof was that the appellant checked into the motel, secured performance of $423.48 worth of services, gave a worthless check in full payment for those services, and then was permitted to secure $142.58 worth of additional services. Did this prove what was alleged? It did not.

The deception of presenting the worthless check secured performance of services, but only the services that were performed after the check was given. *Cortez v. State*, 582 S.W.2d 119 (Tex.Cr.App.1979); *Norman v. State*, 170 Tex.Cr.R. 25, 338 S.W.2d 714 (1960). This means that the services secured by presentation of the worthless check were not worth more than $200 (they were worth $142.58), so the proof of allegation (2) failed. It also means that the worthless check was not presented in payment for the services it secured (it was presented in payment for services previously secured), so the proof of allegation (3) failed.

Insofar as the Court's opinion holds this, I join it. The speculation about "what affected Herz's judgment Monday night" I

cannot join. I can only say, after viewing the evidence in the light most favorable to the State, that a rational trier of fact could have believed beyond a reasonable doubt * that the giving of the worthless check secured the subsequent performance of the $142.58 in services, but not the $423.48 that was performed before the check was given. So the felony conviction cannot stand.

### DISSENTING OPINION ON STATE'S MOTION FOR REHEARING

DALLY, Judge.

I dissent. I believe the correct disposition of this appeal is to be found in my opinion dissenting to the majority opinion of the panel.

W. C. DAVIS and McCORMICK, JJ., join in this dissent.

---

* *See generally Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Cr. App.1981).