Opinion filed December 1, 2005












 
 
  
 
 







 
 
  
 
 




Opinion filed December 1, 2005

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00095-CR 

                                                    __________

 

                                     RONNIE RAY HUSE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 266th District Court

 

                                                           Erath
County, Texas

 

                                                Trial
Court Cause No. CR 11601

 



 

                                                                   O
P I N I O N

 

Ronnie Ray Huse appeals his conviction for theft
of service.  A jury found appellant
guilty and assessed his punishment at two years in a state jail facility.  Appellant contends that the evidence is constitutionally
insufficient and the indictment inadequate to support his conviction.  We affirm.

                                                          BACKGROUND
FACTS








Appellant moved his mother into Golden Age Manor
Nursing Center in Dublin in April 2001. 
Appellant agreed with Golden Age=s
administrator, Donna Morgan, to take the necessary steps to qualify his mother
for Medicaid.  Until then, she would be
private pay.  To entitle his mother to
Medicaid benefits, appellant agreed to establish a Medicaid trust fund bank
account.

Golden Age=s
owner, Bobbie Nichols, received notification in April that appellant had
submitted a Medicaid application for his mother but was advised in May that
approval was delayed.  In September,
Nichols learned that Medicaid had denied appellant=s
application because of his failure to furnish information to the government and
because of his failure to establish the necessary trust fund bank account.  Nichols advised appellant that his Medicaid
application had been denied and offered to help him establish the required bank
account.  Appellant declined her offer,
indicating that he would take care of it; but he did not.  Eventually, Nichols established the bank
account herself.

In October, Nichols reminded appellant that he had
an outstanding balance for his mother=s
care and treatment.  He promised to pay
it.  Eventually, after further phone
calls, appellant gave Golden Age a check in December which brought his mother=s account current through the end of
November.

Nichols phoned appellant on December 26, 2001, and
told him that December=s
billing was due.  Appellant responded
that he thought that Medicaid would pick up the December bill.  Golden Age received no payment from appellant
or Medicaid; and, on March 5, 2002, Nichols wrote appellant a demand letter
giving him until March 15 to bring his mother=s
account current.  Nichols received a
check on March 15 for $8,107.00, which was dishonored because of insufficient
funds.

Nichols phoned appellant when she learned that his
check had not been honored by the bank. 
He stated that there was money in the account and that he would send
another check, but he never did.  Nichols
sent a second demand letter on March 25th which was returned unclaimed.  She then left a message on appellant=s answering machine advising him of her
intention to file criminal charges. 
Appellant returned this call and promised to come to Golden Age, to make
the check good, and to sign papers to get a bank draft for his mother
started.  He did not do so.  Subsequently, appellant promised to overnight
a replacement check but did not do this either.








Golden Age allowed appellant=s mother to stay at their facility and
continued to provide care and treatment. 
Nichols knew that appellant=s
mother was receiving VA and Social Security benefits.  She contacted governmental officials and
requested that they directly deposit appellant=s
mother=s
payments into her Medicaid trust fund account. 
VA checks started coming to the trust fund account in June.  Medicaid eventually approved appellant=s mother for benefits beginning in
October or November.  Medicaid paid
retroactively to April of 2002, but the Medicaid payment did not bring
appellant=s account
current because the patient was responsible for the first $1,500.00 per month
of nursing home charges.

                                                                        ISSUES

Appellant was convicted of violating TEX. PEN.
CODE ANN. ' 31.04(a)
(Vernon Supp. 2005)(theft of service). 
Appellant argues that this conviction cannot stand because his conviction
was based solely upon an insufficient-funds check for an antecedent debt and
because his indictment did not provide him with due process.

                         Was
Appellant Improperly Prosecuted For Writing An Insufficient-

                                         Funds
Check to Pay for Antecedent Services?

 

Section 31.04(a) makes the theft of service a
crime.  In relevant part it provides:

(a) A person commits theft of service if, with
intent to avoid payment for service that he knows is provided only for
compensation:

 

(1) he intentionally or knowingly secures performance
of the service by deception, threat, or false token.[1]

 

ADeception@
is defined in TEX. PEN. CODE ANN. '
31.01(1) (Vernon Supp. 2005) to mean:

 

(A) creating or confirming by words or conduct a
false impression of law or fact that is likely to affect the judgment of
another in the transaction, and that the actor does not believe to be true;

 

(B) failing to correct a false impression of law
or fact that is likely to affect the judgment of another in the transaction,
that the actor previously created or confirmed by words or conduct, and that
the actor does not now believe to be true;

 

*   *   *

 








(E) promising performance that is likely to affect
the judgment of another in the transaction and that the actor does not intend
to perform or knows will not be performed, except that failure to perform the
promise in issue without other evidence of intent or knowledge is not
sufficient proof that the actor did not intend to perform or knew the promise
would not be performed.

 

Appellant argues that the evidence is
constitutionally insufficient[2]
to establish his guilt beyond a reasonable doubt because his check was written
for antecedent rather than future services and that, therefore, it was not used
to Asecure@
service as required by the statute.

The parties agree on the application of Section
31.04(a) in two instances.  First, if one
simply pays for a completed transaction with an insufficient-funds check, no
violation is shown.  On the other hand,
if one prepays for services with that same check, the statute is
implicated.  The distinction is the
vendor=s
reliance.  The statute requires proof
that appellant secured services with a deceptive act.  In the first instance, because the services
were provided before the check was tendered, it cannot be said that the vendor
relied upon it or that appellant secured anything with it.  In the latter, assuming no services would
have been provided without the prepayment, it can be safely said that the
vendor relied upon the check and that appellant successfully secured services
with it.

This case falls somewhere between the two.  Appellant=s
check was for services previously rendered, but Golden Age continued providing
appellant=s mother
with care and treatment after  receipt of
the check.  Does this constitute a
violation because, as the State argues, Golden Age relied upon the check to
continue caring for appellant=s
mother?  Or is the fact that appellant=s check was solely for services
previously provided outcome determinative as appellant argues?  Both parties agree that our analysis is
governed by two Texas Court of Criminal Appeals=s
decisions:  Gibson v. State, 623
S.W.2d 324 (Tex.Crim.App.1980), and Cortez v. State, 582 S.W.2d 119
(Tex.Crim.App.1979).








In Cortez, 582 S.W.2d at 119, the defendant
paid for window tinting with an insufficient- funds check and was convicted of
theft by check of services.  The Court of
Criminal Appeals reversed, finding that the statute requires a deceptive act
which affects the judgment of another. 
Because defendant=s
sole deceptive act was paying with an insufficient-funds check after his
windows had been tinted, the check could not have affected the vendor=s judgment.  Id. at 120-21. 

In Gibson, 623 S.W.2d at 324, the defendant
was convicted of theft by check of services for paying his Holiday Inn bill
with a check drawn on a bank at which he had no account.  A Texas Court of Criminal Appeals panel cited
Cortez and reversed, holding that the check could not have induced the
Holiday Inn to provide any services since it was given after the fact.  Id. at 326. The State filed a motion
for rehearing which was heard by the court en banc.  In that motion, the State argued that, after
passing the worthless check, the defendant incurred additional charges of
$142.58 and that his check confirmed the false impression that he intended to
pay for his entire bill.  That false
impression, according to the State, affected the Holiday Inn=s judgment in the events following the
check=s
receipt.  Id. at 329.  Judge Clinton, writing for the court en banc,
rejected the State=s
argument for two reasons.  First, Section
31.04(a) required, at that time, theft of at least $200.00 in services.  The post-check services totaled only $142.58.  Secondly, the evidence conclusively
established that the Holiday Inn did not rely upon the check because it
immediately undertook significant activity to determine its validity.  Id. at 331.

Appellant argues that Cortez and Gibson
require reversal because, as in those cases, his check was written for services
previously provided, which as a matter of law is not a violation of Section
31.04(a).  The State counters that Gibson
left open the possibility that a worthless check could secure future services
upon proper proof of reliance.  We agree
with appellant that an insufficient-funds check given to pay an antecedent
debt, without more, does not violate Section 31.04(a).  Whether that check could be a deceptive act
which secured future services requires a legal sufficiency review of the
record.

A legal sufficiency review requires consideration
of all of the evidence in the light most favorable to the verdict and a
determination of whether any rational trier of fact could find the essential
elements of the crime beyond a reasonable doubt.  Ross v. State, 133 S.W.3d 618, 620
(Tex.Crim.App.2004).








Appellant=s
indictment required the State to prove that he secured services worth at least
$1,500.00 but not more than $20,000.00 using the insufficient-funds check.  Nichols testified that appellant owed Golden
Age approximately $10,000.00 at the time of trial.  When she sent her March demand letters,
however, appellant owed only $8,107.00. 
Appellant=s
insufficient-funds check for $8,107.00 was received in response to the demand
letter.  The record is replete with
appellant=s
misrepresentations about the check and his ability and willingness to make it
good, but there is no evidence that appellant=s
check affected Golden Age=s
judgment prior to March 15 or that appellant secured any prior services with
it.  Consequently, appellant=s conviction cannot be supported by the
$8,107.00 he owed on March 15.

It is undisputed that Golden Age allowed appellant=s mother to remain after appellant=s check was dishonored and that
appellant continued to accrue additional charges.  Subtracting appellant=s
March 15 balance from his balance at trial, leaves approximately $2,000.00 of
non-reimbursed, post-check charges. 
Whether those charges can be attributed to the check is disputed.  

Appellant contends that Golden Age could only have
relied on the check for the length of time it took to discover that it was
worthless.  Nichols received the check on
March 15.  She learned that it had been
dishonored on March 20.  Golden Age charged
appellant $2,077.00 per month for his mother=s
care.  Using these figures, appellant
contends that Golden Age could not have advanced more than $415.00 in services
in reliance upon his check.

We cannot say, as a matter of law, that Golden Age
was precluded from any reliance on appellant=s
check after learning it had been dishonored. 
Why they continued to allow appellant=s
mother to stay and the extent of the damage they incurred because of his check
are inherently fact questions.

Nichols provided the following testimony on these
issues:

Q.  I believe you said yesterday [the
insufficient-funds check] was for these services that accrued prior to that
time B some
period of time prior to that?

 

A. 
Yes.

 

Q.  And
based on that check did you continue to provide these services to B for [appellant=s
mother]?

 

A.  Yes.

 

Q.  I
mean, you B you
assumed, and I believe you told us yesterday, that [appellant] told you that
was a good check, that it B

 








A.  Yes, sir.

 

Q.  And even though it didn=t clear the bank he continued to tell
you that check was going to be good?

 

A.  Yes.

 

Q.  That he was going to
pay it?

 

A.  Yes.

 

Q.  And you continued to
provide services for his mother based on those representations he made to you?

 

A.  I did.

 

                                                                  *   *   *

 

Q.  Huh B If you consider the B the time that B
huh B
[appellant=s mother]
has been in your facility and what charges have accrued, both before and after
March, when this check was given, what B
how much has B has B has the nursing home lost?

 

A.  Around $10,000.

 

Q.  Huh B Do you B
Were the charges that were accrued after you received the check, this State=s Exhibit 1, the March 13th check, in
excess of $1,500?

 

A.  Yes, sir.

 

Q.  And less than $20,000?

 

A.  Yes, sir.

 

No other witness testified about Golden Age=s reliance, or lack thereof, on
appellant=s
check.  








The jury knew that appellant=s payment came in response to Golden
Age=s demand letter and that he left his
mother at Golden Age.  The jury had
appellant=s bank
statements, which conclusively establish that he had no ability to pay his debt
with this account.[3]  The jury was entitled to infer that he sent
the check to keep Nichols from taking further action; that, by leaving his
mother at Golden Age, he intended to incur additional charges; and that he
intended for Nichols to believe that he would pay those additional charges.

Appellant=s
deceptive conduct was confirmed by other testimony.  Jill Moore, a local pharmacist, testified that
appellant wrote them a hot check for $2,014.86 at about the same time for his
mother=s
medication.  Appellant called his
employer, Gary Greer, to the stand. 
Greer testified that appellant had similar problems in Harris County and
Corpus Christi and that he owed approximately $60,000.00 in back child support.

The surrounding circumstances also support Golden
Age=s reliance.  In March, Nichols did not know if appellant=s mother would ever qualify for
Medicaid benefits nor when the benefits might start.  Appellant=s
mother=s Social
Security and VA checks were not yet being deposited into her trust
account.  Consequently, appellant was the
only source of payment.  Had he ignored
Nichols=s demand
letter or made no effort to pay his mother=s
charges, a reasonable juror could conclude that Golden Age would have asked
appellant to move appellant=s
mother and that Golden Age sustained at least $1,500.00 in damages in reliance
upon appellant=s
check.  We hold that there was legally
sufficient testimony to support a conviction for theft of service, and his
first issue on appeal is overruled.

                                      Did
Appellant=s
Indictment Provide Due Process?

Appellant argues that, if the evidence was legally
sufficient to support a conviction, his indictment was not.  The indictment read as follows:

RONNIE
RAY HUSE, hereinafter styled [Appellant], on or about the 13th day of March
A.D. 2002 and before the presentment of this indictment, in the County and
State aforesaid, did then and there, by deception, threat, or false token,
to-wit: issue an insufficient check, intentionally or knowingly secure
performance of a service, namely, care for his mother from the Golden Age
Manor, of the value of $1,500 or more but less than $20,000, from Bobbie
Nichols, intending to avoid payment for the service and knowing that the
service was provided only for compensation.

 








Appellant argues initially that this indictment does not support
a conviction for any promise that he may have made in April 2001 when he
initially moved his mother to Golden Age. 
We agree.  The point, however, is
immaterial.  The trial court=s charge followed the indictment and
instructed the jury that it must find beyond a reasonable doubt that appellant
deceptively secured services of at least $1,500.00 by issuing an insufficient
check on or about March 13. 
Consequently, he was not tried for promises made in April 2001.

Appellant next argues that the indictment is
insufficient to support a conviction for Apromising
to pay the insufficient funds check.@  Again, we agree.  We disagree, however, that appellant was
convicted for failing to make the check good.

Appellant=s
promises to make the check good, while leaving his mother at Golden Age, are
relevant to establish intent.  As noted
in greater detail in our discussion of the legal sufficiency of the evidence,
Golden Age relied upon appellant=s
promise to pay; and it considered this check evidence of that intention.  Regardless of the amount of money appellant
owed on March 15, the testimony was undisputed that Golden Age relied upon his
check by deferring legal action and by allowing his mother to stay.  As a result, appellant incurred at least
$1,500.00 in additional charges.

We find that the indictment provided due process
by giving appellant adequate notice of the charges he faced and that his
conviction is consistent with the allegation in the indictment.  Issues 2 and 3 are overruled.

                                                                  CONCLUSION

We have considered and overruled each of appellant=s challenges to his conviction.  The evidence is legally sufficient to support
his conviction, and the indictment provided him with due process.  The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

December 1, 2005

Publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











     [1]In
addition to theft of service by deception, threat, or false token, Section
31.04(a) also makes it a crime to: 
divert services (Section 31.04(a)(2)); keep rented personal property beyond
the length of a written rental agreement (Section 31.04(a)(3)); and secure the
performance of service by agreeing to provide compensation and, after the
service is rendered, failing to pay after receiving a demand for payment
(Section 31.04(a)(4)).





     [2]We
will treat appellant=s challenge as a legal sufficiency challenge.  See Jones v. State, 944 S.W.2d 642,
650 n.11 (Tex.Crim.App. 1996), cert. den=d, 522 U.S.
832 (1997).





     [3]Appellant=s balance on January 31, 2002, was
$<118.90>.  His balance on February
28, 2002, was $379.18 and on March 31, 2002, was $788.47.  During March, he only deposited $2,665.00
into this account, and he incurred insufficient funds charges for 8 checks.