Ronnie Ray HUSE, Appellant,

v.

STATE of Texas, Appellee.

No. 11–04–00095–CR.

Court of Appeals of Texas, Eastland.

Dec. 1, 2005.

Rehearing Overruled Jan. 19, 2006.

---

Jed Silverman, Michael A. Maness, Houston, for appellant.

John Terrill, District Attorney, Jason Cashon, Asst. Dist., Stephenville, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Ronnie Ray Huse appeals his conviction for theft of service. A jury found appellant guilty and assessed his punishment at two years in a state jail facility. Appellant contends that the evidence is constitutionally insufficient and the indictment inadequate to support his conviction. We affirm.

### BACKGROUND FACTS

Appellant moved his mother into Golden Age Manor Nursing Center in Dublin in April 2001. Appellant agreed with Golden Age's administrator, Donna Morgan, to take the necessary steps to qualify his mother for Medicaid. Until then, she would be private pay. To entitle his mother to Medicaid benefits, appellant agreed to establish a Medicaid trust fund bank account.

Golden Age's owner, Bobbie Nichols, received notification in April that appellant had submitted a Medicaid application for his mother but was advised in May that approval was delayed. In September, Nichols learned that Medicaid had denied appellant's application because of his failure to furnish information to the government and because of his failure to establish the necessary trust fund bank account. Nichols advised appellant that his Medicaid application had been denied and offered to help him establish the required bank account. Appellant declined her offer, indicating that he would take care of

it; but he did not. Eventually, Nichols established the bank account herself.

In October, Nichols reminded appellant that he had an outstanding balance for his mother's care and treatment. He promised to pay it. Eventually, after further phone calls, appellant gave Golden Age a check in December which brought his mother's account current through the end of November.

Nichols phoned appellant on December 26, 2001, and told him that December's billing was due. Appellant responded that he thought that Medicaid would pick up the December bill. Golden Age received no payment from appellant or Medicaid; and, on March 5, 2002, Nichols wrote appellant a demand letter giving him until March 15 to bring his mother's account current. Nichols received a check on March 15 for $8,107.00, which was dishonored because of insufficient funds.

Nichols phoned appellant when she learned that his check had not been honored by the bank. He stated that there was money in the account and that he would send another check, but he never did. Nichols sent a second demand letter on March 25th which was returned unclaimed. She then left a message on appellant's answering machine advising him of her intention to file criminal charges. Appellant returned this call and promised to come to Golden Age, to make the check good, and to sign papers to get a bank draft for his mother started. He did not do so. Subsequently, appellant promised to overnight a replacement check but did not do this either.

Golden Age allowed appellant's mother to stay at their facility and continued to provide care and treatment. Nichols knew that appellant's mother was receiving VA and Social Security benefits. She contacted governmental officials and requested that they directly deposit appellant's mother's payments into her Medicaid trust fund account. VA checks started coming to the trust fund account in June. Medicaid eventually approved appellant's mother for benefits beginning in October or November. Medicaid paid retroactively to April of 2002, but the Medicaid payment did not bring appellant's account current because the patient was responsible for the first $1,500.00 per month of nursing home charges.

## ISSUES

Appellant was convicted of violating TEX. PEN. CODE ANN. § 31.04(a) (Vernon Supp.2005)(theft of service). Appellant argues that this conviction cannot stand because his conviction was based solely upon an insufficient-funds check for an antecedent debt and because his indictment did not provide him with due process.

*Was Appellant Improperly Prosecuted For Writing An Insufficient–Funds Check to Pay for Antecedent Services?*

Section 31.04(a) makes the theft of service a crime. In relevant part it provides:

(a) A person commits theft of service if, with intent to avoid payment for service that he knows is provided only for compensation:

   (1) he intentionally or knowingly secures performance of the service by deception, threat, or false token.[1]

---

1. In addition to theft of service by deception, threat, or false token, Section 31.04(a) also makes it a crime to: divert services (Section 31.04(a)(2)); keep rented personal property beyond the length of a written rental agreement (Section 31.04(a)(3)); and secure the performance of service by agreeing to provide compensation and, after the service is rendered, failing to pay after receiving a demand for payment (Section 31.04(a)(4)).

"Deception" is defined in TEX. PEN. CODE ANN. § 31.01(1) (Vernon Supp. 2005) to mean:

> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

> \* \* \*

> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

■ Appellant argues that the evidence is constitutionally insufficient[2] to establish his guilt beyond a reasonable doubt because his check was written for antecedent rather than future services and that, therefore, it was not used to "secure" service as required by the statute.

The parties agree on the application of Section 31.04(a) in two instances. First, if one simply pays for a completed transaction with an insufficient-funds check, no violation is shown. On the other hand, if one prepays for services with that same check, the statute is implicated. The distinction is the vendor's reliance. The stat-ute requires proof that appellant *secured* services with a deceptive act. In the first instance, because the services were provided before the check was tendered, it cannot be said that the vendor relied upon it or that appellant secured anything with it. In the latter, assuming no services would have been provided without the prepayment, it can be safely said that the vendor relied upon the check and that appellant successfully secured services with it.

This case falls somewhere between the two. Appellant's check was for services previously rendered, but Golden Age continued providing appellant's mother with care and treatment after receipt of the check. Does this constitute a violation because, as the State argues, Golden Age relied upon the check to continue caring for appellant's mother? Or is the fact that appellant's check was solely for services previously provided outcome determinative as appellant argues? Both parties agree that our analysis is governed by two Texas Court of Criminal Appeals's decisions: *Gibson v. State*, 623 S.W.2d 324 (Tex.Crim. App.1980), and *Cortez v. State*, 582 S.W.2d 119 (Tex.Crim.App.1979).

In *Cortez*, 582 S.W.2d at 119, the defendant paid for window tinting with an insufficient-funds check and was convicted of theft by check of services. The Court of Criminal Appeals reversed, finding that the statute requires a deceptive act which affects the judgment of another. Because defendant's sole deceptive act was paying with an insufficient-funds check after his windows had been tinted, the check could not have affected the vendor's judgment. *Id.* at 120–21.

In *Gibson*, 623 S.W.2d at 324, the defendant was convicted of theft by check of

**2.** We will treat appellant's challenge as a legal sufficiency challenge. *See Jones v. State*, 944 S.W.2d 642, 650 n. 11 (Tex.Crim.App.1996), cert. den'd, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).

services for paying his Holiday Inn bill with a check drawn on a bank at which he had no account. A Texas Court of Criminal Appeals panel cited *Cortez and reversed, holding that the check could not have induced* the Holiday Inn to provide any services since it was given after the fact. *Id.* at 326. The State filed a motion for rehearing which was heard by the court en banc. In that motion, the State argued that, after passing the worthless check, the defendant incurred additional charges of $142.58 and that his check confirmed the false impression that he intended to pay for his entire bill. That false impression, according to the State, affected the Holiday Inn's judgment in the events following the check's receipt. *Id.* at 329. Judge Clinton, writing for the court en banc, rejected the State's argument for two reasons. First, Section 31.04(a) required, at that time, theft of at least $200.00 in services. The post-check services totaled only $142.58. Secondly, the evidence conclusively established that the Holiday Inn did not rely upon the check because it immediately undertook significant activity to determine its validity. *Id.* at 331.

■ Appellant argues that *Cortez* and *Gibson* require reversal because, as in those cases, his check was written for services previously provided, which as a matter of law is not a violation of Section 31.04(a). The State counters that *Gibson* left open the possibility that a worthless check could secure future services upon proper proof of reliance. We agree with appellant that an insufficient-funds check given to pay an antecedent debt, without more, does not violate Section 31.04(a). Whether that check could be a deceptive act which secured future services requires a legal sufficiency review of the record.

■ A legal sufficiency review requires consideration of all of the evidence in the light most favorable to the verdict and a determination of whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Ross v. State,* 133 S.W.3d 618, 620 (Tex. Crim.App.2004).

Appellant's indictment required the State to prove that he secured services worth at least $1,500.00 but not more than $20,000.00 using the insufficient-funds check. Nichols testified that appellant owed Golden Age approximately $10,000.00 at the time of trial. When she sent her March demand letters, however, appellant owed only $8,107.00. Appellant's insufficient-funds check for $8,107.00 was received in response to the demand letter. The record is replete with appellant's misrepresentations about the check and his ability and willingness to make it good, but there is no evidence that appellant's check affected Golden Age's judgment prior to March 15 or that appellant secured any prior services with it. Consequently, appellant's conviction cannot be supported by the $8,107.00 he owed on March 15.

It is undisputed that Golden Age allowed appellant's mother to remain after appellant's check was dishonored and that appellant continued to accrue additional charges. Subtracting appellant's March 15 balance from his balance at trial, leaves approximately $2,000.00 of non-reimbursed, post-check charges. Whether those charges can be attributed to the check is disputed.

Appellant contends that Golden Age could only have relied on the check for the length of time it took to discover that it was worthless. Nichols received the check on March 15. She learned that it had been dishonored on March 20. Golden Age charged appellant $2,077.00 per month for his mother's care. Using these figures, appellant contends that Golden Age could

not have advanced more than $415.00 in services in reliance upon his check.

We cannot say, as a matter of law, that Golden Age was precluded from any reliance on appellant's check after learning it had been dishonored. Why they continued to allow appellant's mother to stay and the extent of the .damage they incurred because of his check are inherently fact questions.

Nichols provided the following testimony on these issues:

Q. I believe you said yesterday [the insufficient-funds check] was for these services that accrued prior to that time—some period of time prior to that?

A. Yes.

Q. And based on that check did you continue to provide these services to— for [appellant's mother]?

A. Yes.

Q. I mean, you—you assumed, and I believe you told us yesterday, that [appellant] told you that was a good check, that it—

A. Yes, sir.

Q. And even though it didn't clear the bank he continued to tell you that check was going to be good?

A. Yes.

Q. That he was going to pay it?

A. Yes.

Q. And you continued to provide services for his mother based on those representations he made to you?

A. I did.

* * *

Q. Huh—If you consider the—the time that—huh—[appellant's mother] has been in your facility and what charges have accrued, both before and after March, when this check was given, what—how much has—has—has the nursing home lost?

A. Around $10,000.

Q. Huh—Do you—Were the charges that were accrued after you received the check, this State's Exhibit 1, the March 13th check, in excess of $1,500?

A. Yes, sir.

Q. And less than $20,000?

A. Yes, sir.

No other witness testified about Golden Age's reliance, or lack thereof, on appellant's check.

The jury knew that appellant's payment came in response to Golden Age's demand letter and that he left his mother at Golden Age. The jury had appellant's bank statements, which conclusively establish that he had no ability to pay his debt with this account.[3] The jury was entitled to infer that he sent the check to keep Nichols from taking further action; that, by leaving his mother at Golden Age, he intended to incur additional charges; and that he intended for Nichols to believe that he would pay those additional charges.

Appellant's deceptive conduct was confirmed by other testimony. Jill Moore, a local pharmacist, testified that appellant wrote them a hot check for $2,014.86 at about the same time for his mother's medication. Appellant called his employer, Gary Greer, to the stand. Greer testified that appellant had similar problems in Harris County and Corpus Christi and that he owed approximately $60,000.00 in back child support.

The surrounding circumstances also support Golden Age's reliance. In March,

---

**3.** Appellant's balance on January 31, 2002, was $<118.90>. His balance on February 28, 2002, was $379.18 and on March 31, 2002, was $788.47. During March, he only deposited $2,665.00 into this account, and he incurred insufficient funds charges for 8 checks.

Nichols did not know if appellant's mother would ever qualify for Medicaid benefits nor when the benefits might start. Appellant's mother's Social Security and VA checks were not yet being deposited into her trust account. Consequently, appellant was the only source of payment. Had he ignored Nichols's demand letter or made no effort to pay his mother's charges, a reasonable juror could conclude that Golden Age would have asked appellant to move appellant's mother and that Golden Age sustained at least $1,500.00 in damages in reliance upon appellant's check. We hold that there was legally sufficient testimony to support a conviction for theft of service, and his first issue on appeal is overruled.

### Did Appellant's Indictment Provide Due Process?

■ Appellant argues that, if the evidence was legally sufficient to support a conviction, his indictment was not. The indictment read as follows:

RONNIE RAY HUSE, hereinafter styled [Appellant], on or about the 13th day of March A.D.2002 and before the presentment of this indictment, in the County and State aforesaid, did then and there, by deception, threat, or false token, to-wit: issue an insufficient check, intentionally or knowingly secure performance of a service, namely, care for his mother from the Golden Age Manor, of the value of $1,500 or more but less than $20,000, from Bobbie Nichols, intending to avoid payment for the service and knowing that the service was provided only for compensation.

Appellant argues initially that this indictment does not support a conviction for any promise that he may have made in April 2001 when he initially moved his mother to Golden Age. We agree. The point, however, is immaterial. The trial court's charge followed the indictment and instructed the jury that it must find beyond a reasonable doubt that appellant deceptively secured services of at least $1,500.00 by issuing an insufficient check on or about March 13. Consequently, he was not tried for promises made in April 2001.

Appellant next argues that the indictment is insufficient to support a conviction for "promising to pay the insufficient funds check." Again, we agree. We disagree, however, that appellant was convicted for failing to make the check good.

Appellant's promises to make the check good, while leaving his mother at Golden Age, are relevant to establish intent. As noted in greater detail in our discussion of the legal sufficiency of the evidence, Golden Age relied upon appellant's promise to pay; and it considered this check evidence of that intention. Regardless of the amount of money appellant owed on March 15, the testimony was undisputed that Golden Age relied upon his check by deferring legal action and by allowing his mother to stay. As a result, appellant incurred at least $1,500.00 in additional charges.

We find that the indictment provided due process by giving appellant adequate notice of the charges he faced and that his conviction is consistent with the allegation in the indictment. Issues 2 and 3 are overruled.

### CONCLUSION

We have considered and overruled each of appellant's challenges to his conviction. The evidence is legally sufficient to support his conviction, and the indictment provided him with due process. The judgment of the trial court is affirmed.