

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1717-11

**TONYA JEAN DAUGHERTY, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
COLLIN COUNTY**

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J. and PRICE, WOMACK, JOHNSON, and ALCALA, JJ., joined. HERVEY, J., filed a dissenting opinion in which MEYERS and KEASLER, JJ., joined.

O P I N I O N

Appellant signed a construction-service contract with a general contractor to build out office space for her and her husband's window-tinting company. Appellant wrote a $1,657 check as a deposit. The rest of the approximately $48,000 contract price was not due until the project was completed. At that time, however, appellant no longer had the money to pay the contractual debt. She gave the contractor an "insufficient funds" check. A jury convicted

her of theft of services for obtaining the contractor's service by deception when she gave him the insufficient-funds check after he had completed the build-out. The court of appeals reversed the jury's verdict and rendered a judgment of acquittal because it determined that the evidence was legally insufficient to support the conviction.[1] We granted the State's petition to decide whether the failure to prove that appellant secured the performance of the contract with a "worthless check" was merely an immaterial variance under *Gollihar*[2] or whether the State failed to prove the essential element that an act of deception secured performance of the contractor's services.[3] We conclude that the State failed to prove the offense of theft of service by deception, so we affirm the court of appeals.

I.

On April 16, 2008, appellant and her husband, Paul Daugherty, entered into a contract with a general contractor, Gary Bailey, for Mr. Bailey to finish out office space for the Daughertys' window-tinting business. The contract was for a little more than $48,000 in all. In accordance with Mr. Bailey's normal practice, his contract stipulated that the company,

---

[1] *Daugherty v. State*, No. 05-10-00832-CR, 2011 WL 3690052, at *3 (Tex. App.–Dallas Aug. 24, 2011) (not designated for publication).

[2] *Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001).

[3] The State's sole ground for review is as follows:

This Court held in *Cada v. State* that "immaterial variance" law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the indictment. But what happens when the allegation at issue is not a statutory element and not part of the definitions of the offense but originates from another statute entirely? Does *Gollihar*'s two-part test for materiality apply?

Expertint, would pay a small deposit up front and then pay the "lion's share" when the project was completed and a certificate of occupancy obtained. According to the contract, it was supposed to be a thirty-day job with the build-out completed by June 7th. The Daughertys' landlord would pay the major portion of the build-out, some $32,000, while the Daughertys, as tenants, would pay about $16,000.

Appellant gave Mr. Bailey a check for $1,657 for the deposit on April 16th. Mr. Bailey successfully deposited that check in his bank, but he could not obtain the necessary building permits for over a month. Therefore, the project was significantly delayed. Mr. Bailey finished the build-out on July 2nd, but he did not obtain the certificate of occupancy until July 10th. He said that he called the Daughertys about a week before "because I knew we were virtually there, everything was looking good." He called them to make sure that they had enough "time to make arrangements" if they were short of money at that moment. The Daughertys assured him that they would be able to make the payment. But, in fact, the Daughertys had spent the Expertint money that they had intended to use for the payment of the build-out on personal living expenses during the construction delay. At trial, appellant explained that "we had to use the money that we did have in the account to support our–pay our bills, pay our living expenses, so the money we did have in the beginning to pay [Mr. Bailey] for the services, actually prepay, got ate up with the delay in the building."

Mr. Bailey met the Daughertys at a local Starbucks on July 14th, and they gave him two checks: one was for the landlord's portion of the build-out and the other–a check for

$15,871–for their own portion. Appellant wrote out the two checks on the Expertint company account.[4] The Daughertys told Mr. Bailey that "funds were deposited" in the account; Paul said that the money was coming from American Express. When Mr. Bailey took the checks to the bank two days later, the money was not there. Mr. Bailey called Paul, and then went back to the bank again three or four days later and tried again, but without success. Mr. Bailey called Paul once more, and Paul assured Mr. Bailey that the problem was being taken care of, but it was not. Eventually, Mr. Bailey contacted the "hot check" division of the Collin County D.A.'s Office.

D.A. Investigator Gary Cochrane testified that he tried to resolve the check problem with appellant.[5] She told him that she wrote the check that bounced and that she owed Mr. Bailey the contractual debt. She said that she could pay the debt over time, so they discussed a possible payment plan with a quarter down followed by three monthly payments. Appellant agreed to the plan, and she brought $3,500 of the $4,000 down payment to their meeting. She made the next monthly payment a few days late, but she did not make the last

---

[4] According to appellant, the Daughertys' landlord was out of town at this time, so he could not write a check for his portion of the build-out. Eventually, the landlord did pay his portion in return for Mr. Bailey's release of a contractor's lien against the property. Appellant testified that she knew that Expertint did not have the funds to cover the check in the bank on (or any time after) July 14th, but she wrote the two checks to make Mr. Bailey "feel better about the situation" and to reassure him that he would be paid.

[5] When shown Defendant's Exhibit 4, a print-out of the Internet website for the Collin County District Attorney's Hot Check Division, Mr. Cochrane agreed that the website states that "the D.A's Office cannot accept the following kinds of checks for prosecution: . . . Checks where no goods, products or services were given in **immediate** exchange . . . [or] checks given to pay a pre-existing debt."

two payments. She explained that their company, Expertint, went out of business when the build-out wasn't completed on time. Appellant admitted that, "like a lot of folks," she and her husband were affected by the economy in 2008. The total restitution that appellant paid was $7,658.67. When appellant couldn't pay the remainder of the restitution, the State filed charges of theft of service by deception.

The indictment read that appellant, on or about July 14, 2008,

> by deception, threat, or false token: to wit: by issuing and passing a check, when the defendant did not have sufficient funds in and on deposit with the bank for the payment in full of the check as well as other checks then outstanding, intentionally and knowingly secure performance of a service, namely, construction services, of the value of at least Fifteen Hundred Dollars ($1,500.00) but less than Twenty Thousand Dollars ($20,000.00) from Gary Bailey, intending to avoid payment for the service and knowing that the service was provided only for compensation.

Put more simply, the State alleged that appellant secured the performance of Mr. Bailey's construction services by the deceptive act of giving him a bad check on or about July 14, 2008. A jury convicted appellant of that offense and sentenced her to one year confinement in the State Jail Division, probated for two years, and restitution of $8,317.33.

The court of appeals reversed appellant's conviction and entered a judgment of acquittal. It relied on *Cortez v. State*,[6] and *Gibson v. State*,[7] in concluding that "any deception committed 'by issuing and passing a check, when the defendant did not have sufficient funds in and on deposit,' as alleged in the indictment, was incapable of affecting

---

[6] 582 S.W.2d 119 (Tex. Crim. App. 1979).

[7] 623 S.W.2d 324 (Tex. Crim. App. 1981) (op. on reh'g).

Bailey's judgment with regard to the construction services he had already completed."[8] The

court of appeals followed our well-established precedent that holds that the deceptive act

must occur before, not after, the other person has performed his service.[9]

## II.

Under Texas Penal Code Section 31.04(a), the theft-of-services statute, the State is

required to prove  the following:

1)      The defendant had the intent to avoid payment for a service that she knows is
        provided only for compensation, and

2)      acting with that intent, she intentionally or knowingly

3)      secured the other person's performance of a service

4)      by deception.[10]

All of these elements must occur at the same time.  The defendant must have "secured" the

victim's services–here, Mr. Bailey's construction work–by an act of deception.[11]  That is, the

---

[8] *Daugherty v. State*, 2011 WL 3690052, at *2 ("Any deception that occurs after the other
person has completed performance of the service allegedly stolen would not meet this
requirement [of affected the judgment of another in the transaction]: once the other person has
completed performance of his obligations in the transaction, any later deception would be
incapable of affecting retrospectively his judgment in what he has already completed.").

[9] *Id.* at *3 (citing *Gibson* and *Cortez*).

[10]  TEX. PENAL CODE § 31.04(a) (1) ("A person commits theft of service if, with intent to
avoid payment for service that the actor knows is provided only for compensation: . . . the actor
intentionally or knowingly secures performance of the service by deception, threat, or false
token[.]").

[11] The term "deception" for purposes of the theft of services statute means:
(A)     creating or confirming by words or conduct a false impression of law or

        fact that is likely to affect the judgment of another in the transaction, and

proof must be that (1) Mr. Bailey relied upon appellant's *prior* act of deception when he performed his build-out services, and (2) appellant had no intent to pay Mr. Bailey for his services at the moment that she committed that deceptive act.[12]

When the indictment alleges theft of services by "deception" through the issuance of a bad check, proof that the check was issued *after* the performance of the services will not support a conviction for theft of services.[13]  The defendant's "deception"–issuing a check

---

that the actor does not believe to be true;

(B)    failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

(C)    preventing another from acquiring information likely to affect his judgment in the transaction;

(D)    selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

(E)    promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

*Id*. at § 31.01(1).

[12] Theft of service by deception requires proof of purpose.  The defendant must have the purpose to "obtain the services" of another, and she must simultaneously have a purpose to deceive.  "If the actor believes in the accuracy of the impression he seeks to convey, he will not be guilty of a violation of Section 223.3 [theft by deception] even if his belief is unreasonable." ALI, MODEL PENAL CODE § 223.3 cmt. at 181 (1980).

[13] *Gibson*, 623 S.W.2d at 326 (evidence that defendant "presented a check to a hotel for services previously rendered . . . 'could not have affected the judgment of the complaining

that she implicitly or explicitly claims will be honored by the bank–must be such as is likely

to affect the judgment of the service provider, *i.e.*, to induce him to perform the service.[14] But

once the service provider has completed his contractual performance, his judgment in what

he has already completed cannot be retrospectively affected by any purported deception, such

as issuing a worthless check.[15]

Why is this timing important?  Criminal liability depends upon a person's culpable

mental state at the time the person performs some criminal act and is the convergence of a

bad act and a guilty mind.[16]  Theft of service by deception requires that the defendant intend

to defraud the service provider before that person provides the service, and the defendant

must commit some act of deception–lying about her bank account, giving the service

provider a bad check, promising to pay a leasing contract when the defendant has no intent

---

witness in the delivery of the services allegedly stolen' because the check was presented after the services had been rendered.'"); *Cortez*, 582 S.W.2d at 120-21 (stating that any deception that occurs after the service provider has completed performance will not meet the requirement of theft of service by deception; "once the other person has completed the performance of his obligations in the transaction, any later deception would be incapable of affecting retrospectively his judgment in what he has already completed.").

[14] *Gibson*, 623 S.W.2d at 326; *Cortez*, 582 S.W.2d at 120-21.

[15] *Id*.

[16] TEX. PENAL CODE § 6.02(a); *see, e.g.*, *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994) ("[I]n order to constitute a crime, the act or *actus reus* must be accompanied by a criminal mind or *mens rea* "); *Peterson v. State*, 645 S.W.2d 807, 811 (Tex. Crim. App. 1983) (to constitute theft, intent to deprive owner must exist at time property is taken); *see generally*, 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 19.7(g) (2d ed. 2003) ("In the light of the basic criminal-law principle that the mental and physical elements of the crime must coincide, the knowledge of the falsity of the statement and the intent to defraud must coincide with the obtaining of the title to the property" in theft by deception statutes) (citations omitted).

to do so, etc.–that is likely to affect the judgment of the service provider.[17]  And the service provider must have actually relied upon that deceptive act in providing the service.[18]

In sum, the deception must occur *before* the service is rendered, and that deceptive act must induce the other person to provide the service.  The other person must rely upon the defendant's deceptive act in providing the service.[19]

### III.

In this case, appellant, like the defendants in *Cortez* and *Gibson*, wrote a bad check *after* the service provider had completed his performance.  That check could not have affected Mr. Bailey's judgment in performing his services to renovate appellant's office

---

[17] This requirement, that the deceptive act be one that is likely to affect the judgment of the other person, is meant only to test the relationship between the defendant's falsehood and the transaction to determine if a deception exists.  Some falsehoods, after all, are not likely to affect a service provider's judgment in the transaction.  Only if the jury finds a deceptive act that is likely to affect the judgment of the service provider, must it then consider whether there was reliance, *i.e.*, whether the other person provided the service because of that act of deception. *See State v. LeFevre*, 825 P.2d 681, 686 n.9 (Utah Ct. App. 1992).

[18] *See Swope v. State*, 723 S.W.2d 216, 223 (Tex. App.–Austin 1986), *aff'd on other grounds*, 805 S.W.2d 442 (Tex. Crim. App. 1991)  (concluding that reliance upon the defendant's deception is an element of theft by deception).  That reliance need not be the sole, or even controlling, reason why the victim decided to provide the service, but it must be a substantial or material factor in the decision-making process. *See, e.g.*, *LeFevre*, 825 P.2d at 686-87 (concluding that the victim "need only have materially relied on the resulting deception"); *State v. Schneider*, 715 P.2d 297, 300 (Ariz. Ct. App. 1986) ("The deceit must be 'material' to constitute the offense, in the sense that it must be a significant factor in the transaction"); *State v. Finch*, 573 P.2d 1048, 1052 (Kan. 1978) (in a theft-by-deception prosecution, "the state must prove that the victim was actually deceived and relied in whole or in part upon the false representation").

[19] *See Garcia v. State*, 669 S.W.2d 169, 171 (Tex. App.–Dallas 1984, pet ref'd) (defendant's act of giving store clerk a stolen credit card without any intent to pay for ring affected the clerk's judgment in giving him a ring during the transaction).

space.  He was already done with the job.[20]

On appeal, the State admitted that appellant did not commit theft of service by writing a worthless check after Mr. Bailey had completed his work.  Instead, the State suggests that its allegation and proof of the alleged deceptive act as being appellant's bad check is just an immaterial variance which should be ignored.  The State now argues that the jury could have found that appellant committed theft by deception under an entirely different theory with a different deceptive act at a different time.[21]

Under this new theory, appellant's deceptive act was that she failed to tell Mr. Bailey

---

[20] *See Hulse v. State*, 180 S.W.3d 847, 850 (Tex. App.–Eastland 2005, pet. ref'd) ("[I]f one simply pays for a completed transaction with an insufficient-funds check, no violation is shown.  On the other hand, if one prepays for services with that same check, the [theft of services] statute is implicated.  The distinction is the vendor's reliance. The statute requires proof that the appellant *secured* services with a deceptive act.").

[21] The State summarizes its argument as follows:

> Under *Malik* and *Gollihar*, evidentiary sufficiency should be measured against the essential elements of the crime as defined by the hypothetically correct jury charge.  The hypothetically correct jury charge is one that is based in the indictment, accurately sets out the law that is authorized by the indictment, adequately describes the offense, and disregards variances that are immaterial under a two-part test adopted in *Gollihar*.  Accurately setting out the law as authorized by the indictment requires that when the indictment narrows the list of possible statutory alternatives for proving the offense, the State is bound to prove the statutory alternative it alleges, regardless of materiality. . . . The only portion of the indictment the State did not prove as specifically alleged was that the worthless check secured Bailey's performance.  But this allegation at issue here was not statutory at all, but merely evidentiary. . . . Because the allegation at issue did not describe the allowable unit of prosecution, the State's failure to prove the allegation could not have rendered the evidence insufficient.

But the State fails to focus on the importance of alleging and proving the deceptive criminal act that it is relying on.   Because a crime is composed of a bad act and a guilty mind, the State must plead and prove the "bad act" that it is relying on.

that she and her husband had already spent the money that was allocated for the office renovations on personal expenses.  Although they did have the money to pay for the building contract at the time she signed the contract, they had spent all of that money before Mr. Bailey had finished his work.  Thus, according to the State, the jury could have found that she failed to correct a false impression–that she still had the money to pay for the contract–during the time Mr. Bailey performed his part of the contract.[22]  Under this theory, appellant did not commit theft of services at the time she entered into the contract with Mr. Bailey,[23] and she did not commit theft of services when she wrote the worthless check after

---

[22]  The State argues,

> The indictment alleged Appellant secured Bailey's services by deception by giving Bailey a worthless check.  At trial, the State proved Appellant secured Bailey's services by standing silently by as Bailey performed under the contract, knowing she had spent the money she intended to pay him with, and by falsely reassuring him a week before he completed his service that she had the money to pay him.  Both variations involve precisely the same statutory language in the theft-of-service offense.

State's Brief at 19.

[23]  If the State had evidence that appellant *never* intended to pay for Mr. Bailey's services, or that she specifically knew that she would not be able to pay for his services at the time that she signed the contract, the State could have pled and proven "deception" under Section 31.01(1)(E) of the Penal Code.  That section states that "deception" means

> promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except the failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE § 31.01(1)(E).  The evidence that appellant had the money to pay for the services at the time she signed the contract and that she paid the contractual deposit with a valid check is some evidence that she did intend to perform the contract at the time she signed.  The

he had completed his work.  Instead, according to this theory, she committed theft by (1)

failing to tell Mr. Bailey to stop work on the contract because she had already spent the funds

allocated for his contract on personal living expenses;[24] and/or (2) reassuring Mr. Bailey, the

week before he was done with his performance, that she would have the money to pay the

contract.[25]   But the State neither pled nor proved these purported acts of deception.

---

State points to no evidence suggesting that she did not intend to pay for Mr. Bailey's services (or knew then that she would not be able to pay) at the time she signed the contract.  Indeed, the D.A. investigator's testimony that  appellant always acknowledged the contractual debt, agreed to pay that debt, and did pay half of it is some evidence that she always intended to pay the contractual debt and therefore never intended to obtain Mr. Bailey's services without paying for them.  The fact that she could not pay this debt is not legally sufficient to prove that she never intended to pay.  *Id.* ("failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.").

[24]  This is like holding the homeowner criminally liable for failing to tell the electric company that he lost his job and won't be able to pay the electric bill when it is due next month, so the electric company can turn off the electricity before the bill is due.

[25] If the State had wanted to prove that Mr. Bailey completed his performance under the contract only because the Daughertys reassured him the week before he was done that they would have the money to perform their end of the contract, the State could have pled and proven "deception" under Section 31.01(1)(B).  That section states that "deception" means

> failing to correct a false impression of law or fact that is likely to affect the
> judgment of another in the transaction, that the actor previously created or
> confirmed by words or conduct, and that the actor does not now believe is true.

TEX. PENAL CODE § 31.01(1)(B).  Under this theory, appellant could be criminally liable only for that portion of the service Mr. Bailey performed after he had called the Daughertys and they assured him that he would be paid.   Perhaps Mr. Bailey might have testified that his judgment concerning the performance of his last week's worth of construction services was affected by the Daughertys' false reassurance that he would be paid.  But Mr. Bailey was never asked that question, so we do not know what he would have said.  And we do not know the value of that last week's worth of service.  Furthermore, under the terms of the written contract,  appellant did not owe Mr. Bailey any money beyond the initial deposit until and unless he completed the project and obtained the certificate of occupancy.  Had he stopped work, this might constitute an

According to the State, once it pled the word "deception" in the indictment, any further description of the specific deceptive act was sheer lagniappe and should be ignored. It was, under this argument, irrelevant that the State had pled one specific act of deception–issuing a worthless check–and the jury returned a verdict concerning that one specific act. Indeed, the jury charge contained a full page of instructions dealing very specifically with "insufficient funds" checks, and the statutory presumption of intent to avoid payment set out in Section 31.04(b) and (c).   The State argues that the jury charge may be ignored and the jury's verdict could be upheld by evidence of entirely different acts of purported deception at entirely different times–ones that did not involve any check.  But even if our "immaterial variance" law allowed such a dramatic variance from the indictment, jury charge, and proof, there is no evidence that Mr. Bailey relied upon those specific acts in completing his contractual performance.[26]

Appellant breached her contract with Mr. Bailey.  She still owes him the money that she promised to pay under that contract.  But this routine civil breach of contract case does not give rise to a criminal conviction for theft of services.  The court of appeals correctly held that the evidence was insufficient to support appellant's conviction.  We therefore affirm the

anticipatory breach of the contract on his part.  In any event, whether appellant's assurance to Mr. Bailey in early July that he would be paid when he finished his part of the contract would be sufficient to establish an act of deception under the statute is not before us because there is no evidence that Mr. Bailey relied upon that assurance in completing his end of the contract.

[26] *See Gibson v. State*, 623 S.W.2d 324, 330-31 (Tex. Crim. App. 1981) (op. on reh'g) (explaining that State could not support theft-of-services conviction on an entirely different theory of deception than that which the State had pled and proven at trial).

judgment of the court of appeals.

Delivered: January 9, 2013
Publish