

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1717-11

**TONYA JEAN DAUGHERTY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

HERVEY, J., filed a dissenting opinion in which MEYERS and KEASLER, JJ., joined.

### DISSENTING OPINION

I respectfully disagree with the disposition of this case. Today the majority holds

that there is insufficient evidence to prove that Appellant committed theft by deception.

But in so holding, the majority ignores key evidence and neglects the ground upon which

we granted review.

On April 16, 2008, Appellant entered into a construction contract with Gary Bailey

to finish out a newly rented office space. The contract was for "$48,251 plus or minus any approved change orders," of which the Appellant's landlord agreed to pay $32,040.00.[1] On the day the contract was executed, Appellant wrote a check for $1,657.00. Bailey went to his bank on the same day and deposited the check, which cleared.

The construction contract provided that substantial completion was to occur "on or about June 7, 2008 (apx 5 weeks after issuance of building permit)." However, Bailey testified that approximately a month and a half passed after the contract's execution before the city issued a permit and he could begin the work. In the meantime, Appellant had spent the money that she intended to pay Bailey on her own personal expenses. On May 31, 2008, Appellant's bank account had a balance of $1,870.59. Thus, she did not have the money in her account to pay Bailey the roughly $15,000 owed, but she did not inform him of this. Meanwhile, Bailey hired subcontractors and began the thirty-day construction project.

When he was one week away from completing the work, Bailey called Appellant to make sure that she would have proper payment arranged by the time of completion, and Appellant assured him that he would be paid. Records showed that Appellant's bank account balance was only $1,839.84 on June 30, 2008. Bailey completed the work on July 3, 2008, and then obtained a certificate of occupancy from the City of Frisco on July

---

[1]Appellant testified that, per their lease agreement, the landlord would pay a portion of the remodeling work done to the building.

10, 2008. There was no work performed on the contract after July 10. According to the contract, the remaining balance owed for the services was then due,[2] so arrangements were made for Bailey to meet with Appellant and her husband on July 14, 2008. At the meeting, Appellant gave Bailey two checks to cover the work completed, one for $15,871.00 for her portion of the cost and another to cover her landlord's portion.[3] Appellant testified that she was aware at the time she wrote the checks that she had insufficient funds to cover them, but that she wrote them because she was "wanting [Bailey] to feel better about the situation" and to believe that he would be paid.

Bailey testified that when he attempted to deposit the $15,871.00 check several days later, he was informed by his banker that there were insufficient funds to cover the check.[4] After speaking with Appellant's husband, Bailey returned to the bank three to four days later, and he again learned that there were insufficient funds to cover the check. Bailey spoke to Appellant again and was assured that there would be funds to cover the check. Bailey then went to the bank a third time and was told that there were insufficient funds to cover the check. After speaking to Appellant's husband one final time, Bailey was assured that the funds for the check were being taken care of, and he deposited the

[2]The contract provided that the final payment "shall be made after substantial completion of the project (Final and CO city inspections)."

[3]The landlord eventually paid his portion, so charges were pursued only on the $15,871.00 check.

[4]The trial record shows that Bailey and Appellant both banked at Compass Bank, but they used different branches.

check. The next day, the check was returned for insufficient funds. Bank records revealed that at no point from May 31, 2008, through September 2008 did Appellant have sufficient funds in her bank account to cover a $15,000 check.

Bailey testified that he sent Appellant a demand for payment in full, dated August 5, 2008, that included notice that failure to pay within ten days creates a presumption of committing an offense. *See* TEX. PENAL CODE § 31.04(b)(2). When Bailey did not receive payment, he referred the matter to the hot check division of the Collin County District Attorney's Office. Gary Cochrane, an investigator for the hot check division, testified that Appellant worked with the D.A. to set up a payment plan, and under the agreement, Appellant admitted knowing that she lacked the funds in the bank to cover the checks when she wrote them.[5] Cochrane stated, and payment records support, that Appellant paid around $7,658.67 in restitution, but when she failed to make the appropriate payment,[6] Cochrane referred the case to the grand jury division.

Subsequently, Appellant was indicted for theft of services. The indictment alleged that Appellant did

---

[5]The payment plan agreement shows that Appellant initialed next to the following language: "I admit and acknowledge that I signed and issued all of the checks as referenced on the attached list, and I knew at the time I signed and issued those checks that I did not have sufficient funds in the bank to pay those checks . . . ."

[6]Appellant agreed to make a down payment of $4,000 and three separate payments of $3,992.00. However, when she made an initial down payment of $3,500, the remaining payments were adjusted to $4,158.67 each. Appellant made a single payment of $4158.67 and then ceased making payments.

by deception, threat, or false token, to-wit: by issuing and passing a check, when the defendant did not have sufficient funds in and on deposit with the bank for the payment in full of the check as well as all other checks then outstanding, intentionally and knowingly secure performance of a service, namely, construction services, of the value of at least Fifteen Hundred Dollars ($1,500.00) but less than Twenty Thousand Dollars ($20,000.000), from Gary Bailey, intending to avoid payment for the service and knowing that the service was provided only for compensation.

At trial, after the State rested its case, Appellant moved for a directed verdict of not guilty on the grounds that there was insufficient evidence to support that the services were secured by deception. Appellant claimed that the deception, if any, occurred after the services were secured and, thus, Section 31.04(a)(1) of the Texas Penal Code was not violated as the State charged. The trial court denied Appellant's motion.

In the jury charge, the State relied on the statutory definitions of deception contained in Section 31.01(1) of the Texas Penal Code. Accordingly, the jury was instructed that

"Deception" means:
(1) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
(2) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
(3) preventing another from acquiring information likely to affect his judgment in the transaction;
(4) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

(5) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

The jury returned a verdict of guilty. The trial court sentenced Appellant to one year confinement (probated for two years), $8,317.33 restitution, 100 hours of community service, and completion of an anti-theft course. The Dallas Court of Appeals reversed the trial court's judgment and entered a judgment of acquittal after determining that the evidence was insufficient to support Appellant's conviction. *Daugherty v. State*, No. 05-10-00832-CR, 2011 Tex. App. LEXIS 6770, at *8 (Tex. App.—Dallas Aug. 24, 2011) (not designated for publication).

The State appealed to this Court, and we granted discretionary review to specifically address the following issue:

This Court held in *Cada v. State* that "immaterial variance" law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the indictment. But what happens when the allegation at issue is not a statutory element and not part of the definitions of the offense but originates from another statute entirely? Does *Gollihar's* two-part test for materiality apply?

Although we granted review on this ground, which focuses on variance law, the majority gives minimal attention to that issue. *See* Maj. Op. at 13. As I will explain, the variance issue is critical to determining whether the evidence here meets the legal sufficiency standard—this Court must first determine whether there was a variance between the

allegations of the indictment and the proof offered at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).

In assessing the legal sufficiency of the evidence to support a conviction, we analyze "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine "the essential elements of the crime," we look to the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. The law as "authorized by the indictment" includes the statutory elements of the offense "as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The hypothetically correct jury charge does not necessarily have to track all of the charging instrument's allegations—"a hypothetically correct charge need not incorporate allegations that give rise to *immaterial* variances." *Gollihar*, 46 S.W.3d at 253, 256 (emphasis added). A variance occurs when there is a discrepancy between the charging instrument and proof at trial. In such a situation, "the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the

allegations in the charging instrument." *Id.* at 246. A variance between the wording of the indictment and the evidence presented is fatal only if it is material[7] and prejudices the defendant's substantial rights. *Id*. at 257.

Therefore, to determine whether the evidence meets the legal sufficiency standard, this Court must first determine whether there was a variance between the allegations of the indictment and the proof offered at trial. *Gollihar*, 46 S.W.3d at 246.

In this case, the indictment specifically alleged that Appellant, "by deception, threat, or false token, to-wit: by issuing and passing a check, when the defendant did not have sufficient funds in and on deposit with the bank for the payment in full of the check as well as all other checks then outstanding, intentionally and knowingly secure performance of a service, namely, construction services . . . ." I agree with the majority that Appellant's issuance of the bad check (*alone*), as alleged in the indictment, could not have secured Bailey's services because the check was not written until the services were rendered. *See Cortez v. State*, 582 S.W.2d 119, 120-21 (Tex. Crim. App. 1979) ("Obviously any deception that occurs after the other person has completed performance of his obligations in the transaction, any later deception would be incapable of affecting retrospectively his judgment in what he has already completed."); *see also Gibson v. State*, 623 S.W.2d 324, 329-31 (Tex. Crim. App. 1981) (op. on reh'g). In this case,

---

[7]In assessing materiality, we ask two questions: first, "whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial" and, second, "whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Id*. at 248

however, there is evidence of deception long before, and continuing through, the issuance of a bad check. *Cf. Cortez*, 582 S.W.2d 119 (holding that there was no evidence of deception by which the appellant secured performance of the service when the *only* evidence presented showed that the appellant issued a bad check upon completion of the services). Because the instant indictment stated that the services were secured with an insufficient funds check, an issue has developed as to whether other evidence of deception offered by the State was sufficient proof of theft by deception, thus creating a variance.

This Court has recognized three different categories of variance. The variance in this case falls into the third category identified in *Johnson*, that with respect to "an immaterial, non-statutory allegation." *Johnson*, 364 S.W.3d at 299.[8] It neither refers to the statutory language that defines the offense[9] nor involves a non-statutory allegation that

---

[8]This Court identified the variance in *Johnson* as belonging to the third category. There, the State charged the defendant with causing bodily injury by hitting the victim with his hand or twisting her arm, but it proved that the defendant threw the victim against the wall, which caused her to break her arm. *Johnson*, 364 S.W.3d at 293. We determined that, because the variance did not describe the focus or gravamen of the offense and "[t]he precise act or nature of conduct in this result-oriented offense is inconsequential," it did not rise to the level necessary to be material. *Id*. at 298. Variance in the third category is immaterial and, therefore, does not render the evidence legally insufficient. *Id.* at 299.

[9]*Johnson*, 364 S.W.3d at 294; *see, e.g., Cada v. State*, 334 S.W.3d 766, 768 (Tex. Crim. App. 2011)( holding that a material variance existed when the indictment alleged one statutory alternative, that the victim was "a witness," but proof was offered of another statutory alternative, that the victim was either "a prospective witness" or "an informant"); *see also Geick v. State*, 349 S.W.3d 542, 547-48 (Tex. Crim. App. 2011).

describes an allowable unit of prosecution.[10]  Variance in the third category is immaterial and, therefore, does not render the evidence legally insufficient.  *Id.* at 298, 299 ("Variances such as this can never be material because such a variance can never show an 'entirely different offense' than what was alleged.").

The theft of services statute provides several means by which the offense may be committed.  TEX. PENAL CODE § 31.04.  The State alleged only one of those means—theft by deception.  Thus, the State was required to prove only that Appellant "intentionally or knowingly secured performance of the service by deception."  *Id.* § 31.04(a)(1).  Although the State used language from Texas Penal Code Section 32.41(a) in the indictment, that description did not become an element of the statute charged.  It was merely a descriptive averment of the specifically pled manner and means, and it was not a statutory alternative of the controlling statute of theft of service.  *Cf. Geick v. State*, 349 S.W.3d 542, 547 (Tex. Crim. App. 2011) (holding that the State was bound to prove theft by deception, rather than theft alone, when it alleged the more narrow offense by choosing to specifically plead one of five possible circumstances that make consent ineffective).

---

[10]*Johnson*, 364 S.W.3d at 298; *see, e.g., Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011).  There are two gravamina for the crime of theft (the property or service and the ownership), which in combination can be used to determine the allowable unit of prosecution. *See Johnson*, 364 S.W.3d at 297.  The language at issue in this case neither describes the services stolen nor details the ownership of the services stolen.  It merely describes the means by which Appellant committed deception.

And indeed the State proved that which it was required to prove: that Appellant "intentionally or knowingly secured performance of the service by deception." TEX. PENAL CODE § 31.04(a)(1). The State presented evidence of a continuum of actions and events reflecting deception by Appellant to secure Bailey's performance, much of which the majority downplays or completely ignores. The issuance of the worthless check was simply the final act of deception. The State showed that as early as May 31 (when the construction work was just beginning) and continuing until trial, Appellant's bank account never carried a balance large enough to cover the approximately $15,000 promised under the contract; that by the time work began in earnest at the end of May or the beginning of June, she knew that she did not have the money to pay the contract but did not inform Bailey of such and continued to spend the money on her personal expenses; and that a week before Bailey completed the construction work, Bailey called Appellant to ensure that she and her husband would have the money to pay him, and Bailey was assured that he would be paid. All of these acts occurred before services were complete, that is, before Bailey completed construction and then conveyed the certificate of occupancy to Appellant.[11]

The definitions of deception provided by Section 31.01(1) of the Texas Penal Code, except for one not relevant here, require that the deception "affect the judgment of

_____

[11]I disagree with Appellant's argument that the services must have been secured before the contract was executed on April 16, 2008. As long as services were unperformed, those remaining services could be secured through deception. Therefore, deceptive acts affecting Bailey's judgment could have occurred up until July 10, 2008.

another in the transaction." TEX. PENAL CODE § 31.01(1). The majority mistakenly claims that the State failed to prove any such deception. Because services were still outstanding when the identified acts occurred, Appellant's actions could have affected the judgment of Bailey and, thus, satisfied the statutory definitions of deception. Therefore, unlike *Cada v. State*, 334 S.W.3d 766, 768 (Tex. Crim. App. 2011), in which the State pled one statutory alternative (the victim was a "witness") but offered evidence of another statutory alternative (the victim was a "potential witness" or an "informant"), the State in this case alleged theft of services by deception (*i.e.*, that Appellant secured performance of service by deception) and then offered evidence of the same.

The majority contends that even if our "immaterial variance" law allowed this variance from the indictment, the fact remains that the State was still not able to prove beyond a reasonable doubt that Appellant secured services through any form of deception. *See* Maj. Op. at 13. But as discussed previously, the State *did* offer evidence that Appellant's actions could have affected Bailey's judgment in rendering services[12]—Appellant promised to pay for the work before it was completed and knew that she did not have sufficient funds, at any point, to follow through. When the construction work was just beginning, and continuing until trial, Appellant's bank account never carried a balance large enough to cover the contract. By the time work began in earnest, Appellant knew that she did not have the money to pay the contract but

---

[12]TEX. PENAL CODE § 31.01(1).

did not inform Bailey of such. Instead, she continued to spend the money on her personal expenses. And when, a week before the construction was completed, Bailey called Appellant to ensure that she and her husband would have the money to pay him, Appellant assured Bailey that he would be paid. All of these acts occurred before Bailey completed the construction work and conveyed the certificate of occupancy to Appellant. Because there were still services outstanding, Appellant's actions could have affected Bailey's judgment in rendering services. *See* TEX. PENAL CODE § 31.01(1). Therefore, a reasonable trier of fact could have found the essential element of deception beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

In conclusion, although there exists a variance between the charging instrument and what was proven at trial, the variance involves an immaterial, non-statutory allegation. Moreover, the evidence is legally sufficient to support Appellant's conviction. For these reasons, I respectfully dissent.

Hervey, J.

Filed: January 9, 2013

Publish